STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEDORA WATKINS, DEFENDANT-APPELLANT.

Argued October 25, 1988—Decided March 7, 1989.

*Jon S. Pascale,* Designated Counsel, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

At a trial conducted in May 1986, defendant, Ledora Watkins, an eighteen-year-old black woman, was convicted of murder by an all-white jury, and was sentenced to thirty years in State Prison without parole. In an unreported opinion, the Appellate Division affirmed, with one judge dissenting on the issue whether defendant had made a *prima facie* showing that the prosecutor had improperly exercised his peremptory challenges to exclude all blacks from the jury. The matter is before us as a matter of right. *R.* 2:2–1(a)(2). We remand it to the Law

Division for a hearing on the propriety of the exercise of the prosecutor's challenges.

–I–

Defendant was convicted of a murder arising out of a drug-related incident in which she stabbed the victim, an Hispanic male, fifty-two times. The jury rejected her claim of self-defense, and even the dissenting judge in the Appellate Division found the evidence of her guilt to be "overwhelming." The essential issue before us is whether the prosecutor's exercise of his peremptory challenges violated the "defendant's constitutional right to trial by an impartial jury drawn from a representative cross-section of the community." *See State v. Gilmore*, 103 *N.J.* 508, 517 (1986).

The trial was conducted in Burlington County, which, according to the prosecutor, had at that time a black population of approximately ten percent. See *Bureau of the Census, U.S. Dep't Comm.*, *1980 Census of the Population*, vol. 1, ch. B, pt. 32, N.J. 22 (1981) (estimating black population of Burlington County at approximately 12.5 percent). Although the record does not disclose how many blacks were included in the jury array, the number apparently was quite low. Defendant, however, has not challenged the array, from which four blacks were called to serve as prospective jurors. One was excused for cause because he was a Jehovah's Witness who believed he could not sit in judgment of his fellow man. The prosecutor peremptorily excused the other three. Altogether the prosecutor exercised nine of his twelve peremptory challenges, *R.* 1:8–3(d), removing a total of five women, three white and two black, as well as four men, three white and one black. Defense counsel exercised all twenty of his challenges, and contends that he did so in a futile attempt to obtain black representation on the jury.

Consistent with *Rule* 1:8–3(a), the court conducted the *voir dire* of the prospective jurors. The first black juror excused by

the prosecutor was Mrs. Edith Bass, whose husband had been employed for eighteen years as a mediator by the Public Advocate. After the prosecutor excused her, defense counsel moved for a mistrial because she was the only black on the panel. The prosecutor declined to give a reason for excusing the juror, but stated the reason was not her race. The trial court denied the motion, finding that defendant had not made a *prima facie* case of a constitutionally impermissible challenge.

After the first panel of jurors was exhausted, the court called a new panel, which included two blacks, Mr. Richard Obannion and Mrs. Marie Williams. Mr. Obannion was an aircraft-engine mechanic who worked for the Naval Propulsion Center at Trenton. He and his wife, who was employed as a bank teller, had a thirteen-year-old son. The prosecutor, who by this time had challenged five prospective jurors, including Mrs. Bass, excused Mr. Obannion. In the face of another defense motion for a mistrial, the prosecutor again declined to explain the reason for the challenge and, as before, merely asserted that race was not a factor. The trial court denied the motion.

The last black left on the panel was Mrs. Williams, a social worker with the Division of Youth and Family Services. Her husband was an electrician at McGuire Air Force Base, and they had two adult children. During a recess, while the *voir dire* was in process, the prosecutor saw Mrs. Williams, who formerly had been a probation worker, talking with some people present in court. The prosecutor thought the people were friends of the defendant, but the juror explained to the court she had been talking with court employees. After the prosecutor excused Mrs. Williams, the defense again moved for a mistrial, the prosecutor declined to provide an explanation, and the court again denied the motion.

–II–

In this case, we return to the principles first announced in *Gilmore, supra*, 103 *N.J.* at 517, where we held "that Article 1,

paragraphs 5, 9, and 10 of the New Jersey Constitution forbid a prosecutor to exercise peremptory challenges to remove potential petit jurors who are members of a cognizable group on the basis of their presumed group bias." We stated, however, that the State "may peremptorily challenge such venirepersons on grounds of situation-specific bias." *Ibid.*

Underlying *Gilmore* was our recognition that the right to a trial by an impartial jury "entails the right to trial by a jury drawn from a representative cross-section of the community." 103 *N.J.* at 524. As noted by the United States Supreme Court, "[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures which purposefully exclude [members of cognizable groups] from juries undermine public confidence in the fairness of our system of justice." *Batson v. Kentucky,* 476 *U.S.* 79, 87, 106 *S.Ct.* 1712, 1718, 90 *L.Ed.*2d 69, 81 (1986). Thus, "the main point of the representative cross-section rule is 'to achieve an overall impartiality by allowing the interaction of diverse beliefs and values the jurors bring from their group experiences.'" *Gilmore, supra,* 103 *N.J.* at 525 (quoting *People v. Wheeler,* 22 *Cal.*3d 258, 276, 148 *Cal.Rptr.* 890, 902, 583 *P.*2d 748, 761 (1978)). "[I]n this manner," the representative cross-section rule "vindicate[s] the defendant's right to trial by an impartial jury." *Gilmore, supra,* 103 *N.J.* at 525. The point, however, "is not to guarantee proportional representation of every diverse group on every jury, let alone to mandate disproportional representation by setting aside a spot for every discrete group on every jury." *Ibid.* Instead, " '[t]he methods of selection must be so designed as to insure that juries are impartially drawn from community cross-sections,'" and that " '[n]o citizen possessing all other qualifications prescribed by law shall be disqualified for service as a grand or petit juror in any court on account of race, color, creed, national origin, ancestry, marital status or sex.'" *Id.* at 526 (quoting *State v. Rochester,* 54 *N.J.* 85, 88 (1969), and *N.J.S.A.* 2A:72-7). This requirement applies not only to the

method of selecting the jury venire, but also to the selection of the petit jury. *Gilmore, supra,* 103 *N.J.* at 526–27.

Noting that "[t]he representative-cross-section rule by itself is insufficient to insure an impartial jury," as it "exalts demographic representativeness above the overall impartiality it aims to further," *id.* at 530, we approved the use of peremptory challenges to excuse jurors who are believed to possess a specific bias, which is a bias relating to the case, the parties, or the witnesses, *id.* at 530–31.

To implement the principles announced in *Gilmore,* we devised a procedure that begins with a presumption that the prosecutor has exercised his or her challenges for permissible reasons. *Id.* at 535. Furthermore, "the ultimate burden of persuading the trial court that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds remains at all times with the defendant." *Id.* at 534. The defendant may make a *prima facie* showing by establishing that "the potential jurors wholly or disproportionally excluded were members of a cognizable group within the meaning of the representative cross-section rule," and "that there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." *Id.* at 535–36 (footnote omitted). In deciding whether a defendant has established a *prima facie* case, the trial court should consider "all of the relevant circumstances." *Id.* at 536. We described the defendant's burden in establishing a *prima facie* case as "not terribly onerous," *id.* at 537, requiring only that defendant must prove by a "preponderance of the evidence" that the challenges were " 'based on the consideration of impermissible factors,' " *id.* at 537 n. 10.

Once the defendant has established a *prima facie* case, "[t]he burden shifts to the prosecution to come forward with evidence that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias." *Id.* at 537.

"[T]he prosecution's justifications of its peremptory challenges need not rise to the level justifying challenges for cause," but the prosecutor cannot rebut defendant's *prima facie* case "by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.'" *Id.* at 538 (quoting *Batson, supra,* 476 *U.S.* at 98, 106 *S.Ct.* at 1723, 90 *L.Ed.*2d at 80).

After the prosecution has provided its explanations, "the trial court must judge the defendant's *prima facie* case against the prosecution's rebuttal to determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." *Id.* 103 N.J. at 539. In sum, the court should carefully weigh the opposing contentions, determine whether the prosecution has impermissibly exercised its challenges, and set forth the reasons for that determination.

–III–

Notwithstanding the fact that the jury selection began over a year after the date of the Appellate Division decision in *Gilmore*, the record does not disclose an awareness of that decision by the prosecutor or the court. The absence of any such awareness is regrettable because our decision in *Gilmore*, which was issued on July 16, 1986, was retroactive to the date of the Appellate Division decision, May 8, 1985. *Id.* at 544. Thus, the present case is controlled by *Gilmore*, but was tried without express recognition of its requirements.

Our initial concern is whether defendant satisfied the two-part test required for a *prima facie* case under *Gilmore*. With respect to the requirement "that the potential jurors wholly or disproportionally excluded were members of a cognizable group," all of the black jurors, except the one excused for cause, were excused peremptorily. *See id.* at 535. Accordingly, we find that the first part of the test is satisfied.

A closer question is whether defendant has satisfied the second part, which requires proof of a "substantial likelihood" that the prosecutor exercised his peremptory challenges because of "group bias" rather than "situation-specific" bias. *See id.* at 536. Although *Gilmore* left the term "substantial likelihood" undefined, *see State v. Hughes,* 215 *N.J.Super.* 295, 299 (App.Div.1986), we suggested that trial courts consider the following factors: (1) that the prosecutor struck most or all of the members of the identified group from the venire; (2) that the prosecutor used a disproportionate number of his or her peremptories against the group; (3) that the prosecutor failed to ask or propose questions to the challenged jurors; (4) that other than their race, the challenged jurors are as heterogeneous as the community as a whole; and (5) that the challenged jurors, unlike the victims, are the same race as defendant. *Gilmore, supra,* 103 *N.J.* at 536 (drawing on *Wheeler, supra,* 22 *Cal.*3d at 280–81, 148 *Cal.Rptr.* at 905, 583 *P.*2d at 764).

Here, the prosecutor exercised only three of his nine challenges against blacks. In this regard, the prosecutor's conduct contrasts with that of the prosecutor in *State v. Townes,* 220 *N.J.Super.* 38, 41 (App.Div.1987). There, the Appellate Division reversed defendant's conviction for resisting arrest and remanded the matter for a new trial because the prosecutor had exercised nine of ten peremptory challenges to exclude blacks. Inclusion of two blacks on the jury gave the State "no comfort" because the prosecutor had exhausted his peremptory challenges before the jurors were seated. *Id.* at 41.

The inescapable fact remains, however, that the prosecutor excluded all blacks from the jury. To this extent, the present case is close to *Gilmore,* in which the defendant satisfied the relevant part of his *prima facie* case by establishing that the prosecutor "challenged not merely a disproportional number of black women and men, but all seven of them." 103 *N.J.* at 541.

Inevitably, the determination of a "substantial likelihood" of group prejudice depends on the consideration of "all of the

relevant circumstances." *Id.* at 536. Here, the factual background includes the low number of blacks on the jury array, a fact that should have sensitized the prosecutor and the court to the heightened risk that the exclusion of all blacks could, along with other facts, indicate the presence of group bias. That admonition should not be construed as an affirmative action plan for jury selection. A lawyer need not accept an otherwise unacceptable juror merely because the juror is a member of a "cognizable group." Trial lawyers may continue to rely on "gut reactions" or "hunches," *id.* at 538–39, so long as they result in good faith objections. *See id.* at 539 (" 'A prosecutor may act freely on the basis of "hunches" unless and until these acts create a prima facie case of group bias, and even then he may rebut the inference.' "· (quoting *People v. Hall*, 35 *Cal.*3d 161, 170, 197 *Cal.Rptr.* 71, 77, 672 *P.*2d 854, 859 (1983)). A problem arises, however, when racial discrimination masquerades as an unexplained challenge. Inherent in the problem is distinguishing between discrimination, which is never overtly acknowledged and often is subtly concealed, and the good-faith objection based on a legitimate subjective reaction.

It may be that discrimination in the courtroom cannot be eradicated without incurring costs. If the cost is some constraint on counsel's otherwise unbridled freedom in selecting jurors, we believe that it is a price worth paying. The alternative, that counsel could exclude a potential juror merely because the juror is a member of a cognizable group, is unthinkable. A courthouse has no room for invidious discrimination. *Cf. State v. Alvarado*, 221 *N.J.Super.* 324, 328 (Law Div.1987) (exclusion of jurors by prosecutor or defense counsel could undermine confidence in "our system of justice.").

In the absence of a touchstone for discerning discrimination, we are remitted initially to the good faith of counsel and the fairness and impartiality of the trial courts. *Gilmore, supra,* 103 *N.J.* at 535, 545. Our task is to review the proceedings to assure that the defendant's constitutional rights have not been violated.

In this case, defendant was black, few blacks were included in the jury array, the prosecutor peremptorily challenged every black juror except one who was challenged for cause, and defendant was tried by an all-white jury. Valid reasons may or may not exist for the challenges to some or all of the black jurors. It is not for the courts, however, to provide reasons for a prosecutor. Rather, the prosecutor should have provided an explanation for the exercise of his peremptory challenges.

Under the circumstances, we are satisfied that the defendant has established a *prima facie* case that the prosecutor exercised his challenges because of group bias. Consequently, we remand the matter to the Law Division for a *Gilmore* hearing, at which the prosecutor should explain his reasons for peremptorily challenging the three black jurors.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*For affirmance*—None.