63 A.3d 1225

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MARKEES PRUITT A/K/A PRUITT KEES, PRUITT MARKESS D, PRUITT MARKEES D, PRUITT MARKEES, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 10, 2013—Decided April 23, 2013.

Before Judges SAPP–PETERSON, HAAS and HAPPAS.

*Jason A. Coe,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney; *Mr. Coe,* of counsel and on the brief).

*John Vincent Molitor,* Assistant Prosecutor, argued the cause for respondent (*Robert L. Taylor,* Cape May County Prosecutor, attorney; *Mr. Molitor,* of counsel and on the brief).

The opinion of the court was delivered by

HAAS, J.S.C. (temporarily assigned).

In this appeal, we address the issue of whether the prosecutor's use of a peremptory challenge to excuse the only qualified African–American person in the jury panel was sufficient to require the prosecutor to provide a non-discriminatory explanation for the exercise of the challenge. After reviewing the record in light of the contentions advanced on appeal, we hold that because there was only one qualified member of the cognizable group in the jury panel; the defendant was also a member of that same group; the prosecutor failed to ask the juror any follow-up questions; and, other than her race, the juror was as heterogeneous as the community as a whole, the trial judge should have required the prosecutor to explain his non-discriminatory reason for the challenge.

I.

The State developed the following proofs at trial. In May and June 2009, Detective Tyler Parker of the Cape May Prosecutor's Office was assigned to conduct an undercover investigation of illegal drug sales in Wildwood, New Jersey. On May 1, Detective Parker met with a confidential informant, who arranged a meeting between the detective and an individual later identified as defendant. Detective Parker drove an unmarked truck to the specified location, parked, and waited with the informant. Defendant approached the truck and got in. Detective Parker then began driving. As he drove, Detective Parker testified he and defendant "engaged in a discussion over the purchase of CDS" and he agreed

to pay defendant $100 for some crack cocaine. The detective then stopped the truck and defendant got out and walked away.

Detective Kevin McLaughlin was watching the transaction from a surveillance location. After defendant left the truck, the detective followed him on foot and saw him enter the door to the second-floor apartment of an apartment building.

On May 4, 2009, Detective Lakeisha Davis administered a photo array to Detective Parker. He identified defendant as the individual who sold him the cocaine.

Detective Parker conducted three more undercover purchases of cocaine from defendant. These purchases occurred on May 14, May 29, and June 12, 2009. Each occurred in the same manner, with Detective Parker picking up defendant, purchasing the cocaine from him, and dropping defendant off again. All four transactions occurred within 1,000 feet of school property or within 500 feet of public property.

On June 26, 2009, the police obtained and executed a search warrant for the second-floor apartment. Defendant was there, along with Nakeema Brown, who rented the apartment, and defendant's brother, Michael. The police recovered a bag of cocaine from defendant's pocket, as well as a larger bag of cocaine from a trash can. Defendant was then arrested.

Brown testified on defendant's behalf. She stated defendant was her "good friend," but he did not live with her. She believed the cocaine found in her apartment may have belonged to a former boyfriend.

Tried before a jury on a thirteen-count indictment, defendant was convicted of four counts of third-degree distribution of cocaine, *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(3) (counts one, two, three and four); three counts of third-degree distribution of cocaine within 1,000 feet of school property, *N.J.S.A.* 2C:35–7 and *N.J.S.A.* 2C:35–5a(1) (counts five, six, and seven); and four counts of second-degree distribution of cocaine within 500 feet of public property, *N.J.S.A.* 2C:35–7.1 and *N.J.S.A.* 2C:35–5a(1) (counts

eight, nine, ten, and eleven). The jury also convicted defendant of third-degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1) (count twelve); and possession of cocaine with intent to distribute it, *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(3) (count thirteen).

The trial judge merged counts one and five into count eight; counts two and six into count nine; counts three and seven into count ten; count four into count eleven; and count twelve into count thirteen. The judge sentenced defendant to five years in prison on count eight, with a parole ineligibility period of three years; a concurrent seven-year prison term, with a parole ineligibility period of three years, on count nine; a concurrent nine-year prison term, with four-and-one-half years of parole ineligibility on count ten; and a concurrent nine-year term, with four-and-one-half years of parole ineligibility on count eleven. The judge also sentenced defendant to five years in prison, with a parole ineligibility period of two-and-one-half years on count thirteen, which was to run consecutive to the sentence imposed on count ten. Defendant was also assessed appropriate fines and penalties. This appeal followed.

## II.

On appeal, defendant has raised the following contentions:

POINT I

THE TRIAL JUDGE ERRONEOUSLY RULED THAT THE STATE WAS NOT REQUIRED TO GIVE REASONS FOR ITS USE OF A PEREMPTORY STRIKE TO REMOVE THE ONLY AFRICAN–AMERICAN JUROR FROM SERVING IN THIS CASE.

POINT II

[DEFENDANT'S] SENTENCE WAS EXCESSIVE IN LIGHT OF THE CIRCUMSTANCES OF THE OFFENSE AND THE COURT'S ERRONEOUS ANALYSIS OF THE APPLICABLE AGGRAVATING AND MITIGATING FACTORS.

A. It Was Improper to Use the Multiple Controlled Buys as an Aggravating Factor.

B. The Sentence for CDS Possession Should Not Have Been Imposed Consecutive to the Distribution Sentences.

C. [Defendant's] Five–Year Sentence Was Excessive and Unsupported by Reasonably Credible Evidence.

## A.

■ We first turn to defendant's contention that the trial judge erred in declining to require the prosecutor to explain why he used a peremptory challenge to excuse Juror 13, the only African–American person in the jury panel who was qualified to sit as a juror.[1] The trial court conducted the standard juror voir dire, which required all jurors seated in the jury box to answer standard questions designed to screen whether they had general biases, scheduling conflicts, or other issues that might disqualify them from serving on the jury. In response to these questions, Juror 13 stated she had never served on a jury before, had no close family members or friends who were in law enforcement, and knew no one who had been affected by drug or alcohol abuse. She also stated that she could remain impartial in light of the numerous counts of the indictment, would listen to the evidence with an open mind, and agreed that a defendant on trial did not have to prove his innocence, present any evidence, or testify on his own behalf.

In response to the standard biographical question, Juror 13 stated she had worked at the Woodbine Developmental Center for twenty years and "[took] care of the men that live there." She had a high school diploma and was now attending Kaplan University. She was married with three children, ages seventeen, five and four. Her husband worked in "[s]ecurity at the Convention Center in Wildwood." Juror 13 stated that she liked to watch basketball on television and read the Atlantic City Press newspaper on Sundays. She had no non-political bumper stickers on her car. She stated that she liked to spend her spare time "[f]ishing, and I spend time praying." Neither the prosecutor nor defendant's attorney asked Juror 13 any follow-up questions.

---

[1] Defendant is African–American. Only two African–American jurors were in the entire jury panel when the trial began. One juror was excused for cause before any of the prospective jurors were seated in the jury box, leaving only Juror 13.

Once fourteen individuals were qualified to sit as jurors, the judge asked the prosecutor whether he wished to make any peremptory challenges. The prosecutor responded by using five challenges at once to excuse Jurors 4, 5, 6, 8, and 13. Defendant's counsel immediately asked for a side-bar conference. Once at side-bar, defense counsel objected to the prosecutor's use of a peremptory challenge against Juror 13 because there would now be no African–Americans on the jury. Citing our Supreme Court's decision in *State v. Gilmore*, 103 *N.J.* 508, 511 *A.*2d 1150 (1986), counsel asked the judge to require the prosecutor to explain why the juror was excused so that a determination could be made as to whether the peremptory challenge had been exercised for a valid reason or because of Juror 13's race. The prosecutor declined to divulge his reasons for excusing the juror and argued that defendant had failed to make "any threshold showing" to require him to explain the basis for his peremptory challenge.

The judge denied defendant's motion. He stated:

[T]he circumstances certainly are worthy of concern by the [c]ourt. As this [c]ourt understands the law, should a defendant establish a prima facie case by showing substantial likelihood that peremptory challenges were used for discriminatory purposes, the burden then does shift to the [S]tate to show that the exclusion was the product of an acceptable situation[,] specific basis.

For the exercise of a single peremptory challenge even as relates to the only remaining juror of color, query, can that circumstance give rise to a substantial likelihood that that challenge was used for a discriminatory purpose? Difficult for the [c]ourt[ ] to so conclude based upon the record before it, again, particularly given the reality that as relates to the other jurors not of color who were excused on this first round by the [S]tate, that the [c]ourt is less than certain as to what the [S]tate may have found objectionable.

The fact that the only juror of color was excused by the [S]tate in its first opportunity is certainly interesting though statistical reality cannot be denied, but I'm unable to find, given the record that we've established here that a prima facie case has been established to show a substantial likelihood that that singular challenge was intended by the [S]tate for a discriminatory purpose.

The judge continued by noting he was "uncomfortable" with this ruling and he stated that "[i]n this [c]ourt's view[,] this record would be much more full and complete were there to exist [a] legal basis for the [c]ourt to require the [S]tate to describe in the record

its basis for the assertion of the peremptory." Nevertheless, the judge concluded defendant had not demonstrated a "substantial likelihood" that the challenge to the only qualified African–American juror in the jury pool was made for a discriminatory purpose and, therefore, he denied defendant's motion.

In so ruling the trial judge primarily relied upon the Court's 1986 decision in *Gilmore*, where it held that peremptory challenges may not be used to exclude jurors solely for a racially discriminatory reason. *Supra,* 103 *N.J.* at 529, 511 *A.*2d 1150. The Court established the following procedures for trial courts to follow when a defendant alleges that a prosecutor is improperly using peremptory challenges. *Id.* at 533, 511 *A.*2d 1150. All objections to the prosecution's use of peremptory challenges must be made before the jury is sworn. *Id.* at 535, 511 *A.*2d 1150. Any such objection is subject to "the rebuttable presumption that the prosecution has exercised its peremptory challenges on grounds permissible under Article I, paragraphs 5, 9, and 10 of the New Jersey Constitution." *Ibid.*

However, this presumption may be rebutted "upon a defendant's *prima facie* showing that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds." *Ibid.* "To make out such a case, the defendant initially must establish that the potential jurors wholly or disproportionally excluded were members of a cognizable group[.]" [2] *Ibid.* As part of this showing, the defendant must establish "that there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." *Id.* at 536, 511 *A.*2d 1150.

---

[2] The Court defined a "cognizable group" as one "defined on the basis of religious principles, race, color, ancestry, national origin, and sex[.]" *Id.* at 526 n. 3, 511 *A.*2d 1150.

 If such a showing is made, the burden shifts to the State to present a non-discriminatory explanation for striking the juror in question. *Id.* at 537, 511 *A.*2d 1150. The trial court must then determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Id.* at 537–38, 511 *A.*2d 1150.

As noted, the trial judge in this case found that, in order to establish a prima facie case, defendant had to show there was a "substantial likelihood" that the prosecutor's use of a peremptory challenge to Juror 13 was discriminatory. However, in its subsequent decision in *State v. Osorio*, 199 *N.J.* 486, 502, 973 *A.*2d 365 (2009), the Court modified the *Gilmore* rule to make it less difficult for defendants to establish a prima facie case. Relying upon the decision of the United States Supreme Court in *Johnson v. California*, 545 *U.S.* 162, 125 *S.Ct.* 2410, 162 *L.Ed.*2d 129 (2005), the *Osorio* Court stated,

> *Johnson, supra,* explained that rebutting the presumption of constitutionality of a peremptory challenge was not
>
>> intend[ed] ... to be so onerous that a defendant would have to persuade the judge—on the basis of all of the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination.
>
> [*Osorio, supra,* 199 *N.J.* at 502, 973 *A.*2d 365 (quoting *Johnson, supra,* 545 *U.S.* at 170, 125 *S.Ct.* at 2417, 162 *L.Ed.*2d at 139).]

Pursuant to *Johnson,* a defendant satisfies the requirements of making a prima facie showing that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds by "producing evidence sufficient to draw an inference that discrimination has occurred." *Johnson, supra,* 545 *U.S.* at 170, 125 *S.Ct.* at 2417, 162 *L.Ed.*2d at 139. Finding the "substantial likelihood" standard articulated in *Gilmore* to be more stringent than that adopted in *Johnson,* the *Osorio* Court adopted *Johnson's* modification of the burden of proof applicable in establishing a prima facie case of discriminatory jury selection. *Osorio, supra,* 199 *N.J.* at 503, 973 *A.*2d 365. In determining whether a defendant has produced evidence sufficient "to draw an inference that discrimination has occurred[,]" the Court directed trial courts to consider the following factors:

(1) that the prosecutor struck most or all of the members of the identified group from the venire; (2) that the prosecutor used a disproportionate number of his or her peremptories against the group; (3) that the prosecutor failed to ask or propose questions to the challenged jurors; (4) that other than their race, the challenged jurors are as heterogeneous as the community as a whole; and (5) that the challenged jurors, unlike the victims, are the same race as defendant.

[*Id.* at 504, 973 *A.*2d 365 (internal quotation and citation omitted).]

While the trial judge cited our decision in *State v. Osorio,* 402 *N.J.Super.* 93, 952 *A.*2d 1112 (App.Div.2008), rather than the Supreme Court's decision, he indicated that defendant had not "draw[n] an inference of discriminatory purpose[.]" Nevertheless, he mistakenly found that defendant was required to "establish a prima facie case by showing [a] substantial likelihood that peremptory challenges were used for discriminatory purposes[.]" Thus, the judge imposed a more stringent standard than *Osorio* dictates when determining that defendant had not made out a prima facie case.

When we evaluate the evidence in light of the *Osorio* standard, we find that defendant produced sufficient evidence to draw an inference that the peremptory challenge to Juror 13 had been made for a discriminatory reason. Juror 13 appeared to be well qualified to judge the case and, unlike the other four jurors who were challenged at the same time, the reason for her dismissal was far from evident. Juror 5 and Juror 6 had previously served as jurors in criminal cases and returned verdicts acquitting the defendants on at least some of the charges. Juror 4 was the cousin of a man who is serving a life sentence in the New Jersey State Prison for murdering two clergypersons. The fourth juror, Juror 8, answered affirmatively when asked if she had a family member who had received any treatment for drug or alcohol use or abuse. She explained that her son-in-law was involved in a substance abuse program, the program was not proceeding successfully, and her daughter's marriage was ending because of it.

On the other hand, Juror 13 had been employed for twenty years in the same job, had a stable family life, had never served on a jury, and knew no one who had been involved in, or affected by, criminal activity or drug or alcohol abuse. She had regular

hobbies and television viewing habits. The prosecutor asked her no follow-up questions and she appeared "as heterogeneous as the community as a whole." *Osorio, supra,* 199 *N.J.* at 504, 973 *A.*2d 365. On the basis of this evidence, we conclude defendant produced sufficient evidence to raise an inference that Juror 13, the only qualified African–American in the jury panel, was challenged for a discriminatory reason and that the judge should have required the prosecutor to present a non-discriminatory explanation for striking her.

We also conclude that whenever a prosecutor uses a peremptory challenge to excuse the only qualified member of a cognizable group in the jury panel, where the defendant or the victim is also a member of that same group, and where the other *Osorio* factors are met, the trial judge should, upon timely objection by the defense, require the prosecutor to explain his or her non-discriminatory reason for the challenge. Thus far, the reported decisions dealing with this issue have involved multiple peremptory challenges to members of cognizable groups. *See, e.g., Osorio, supra,* 199 *N.J.* at 493, 973 *A.*2d 365 (prosecutor used her first seven peremptory challenges to excuse five African–American jurors and two Hispanic jurors); *State v. Watkins,* 114 *N.J.* 259, 261, 553 *A.*2d 1344 (1989) (prosecutor exercised his peremptory challenges to excuse three African–American jurors); *Gilmore, supra,* 103 *N.J.* at 517, 511 *A.*2d 1150 (prosecutor peremptorily challenged seven African–American jurors). Thus, a pattern of discrimination could be raised by the defense as part of its attempt to demonstrate a prima facie case of discriminatory purpose.

Here, only one qualified African–American juror was a member of the entire jury panel. Thus, no "discriminatory pattern" of peremptory challenges could be established. However, the challenged juror was the same race as defendant; the prosecutor failed to ask or propose questions to the juror; and, other than her race, the juror was as heterogeneous as the community as a whole. Under these circumstances, we believe the exclusion of

Juror 13 through a peremptory challenge raised the inference needed under *Osorio* to require the prosecutor to provide a non-discriminatory explanation for his exercise of the challenge. Requiring the prosecutor to provide such an explanation imposes no unreasonable burden upon the State and serves the interests of justice by ensuring that no juror is excused from service for unconstitutional reasons. Were we to hold otherwise, discriminatory challenges could escape judicial review whenever the representation of cognizable groups in a jury panel was particularly low.

We therefore remand the matter to the trial court for a hearing as to the basis for the prosecutor's peremptory challenge to Juror 13 and a determination by the judge as to whether the prosecutor's conduct was unconstitutionally discriminatory.

B.

Assuming for purposes of this opinion that defendant is not ultimately successful in his *Osorio* challenge, a matter as to which we express no substantive opinion, we reject his argument that his sentence was excessive.

In performing our review of a sentence, we avoid substituting our judgment for the judgment of the trial court. *State v. O'Donnell*, 117 *N.J.* 210, 215, 564 *A.*2d 1202 (1989); *State v. Roth*, 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984). We are satisfied the sentencing judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record, applied the correct sentencing guidelines enunciated in the Code, and the application of the factors to the law, including the judge's fully-supported decision to impose consecutive sentences, do not constitute such clear error of judgment as to shock our judicial conscience. *O'Donnell, supra*, 117 *N.J.* at 215–16, 564 *A.*2d 1202; *State v. Jarbath*, 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989). Accordingly, we discern no basis to second-guess the sentence.

In summary, we remand the matter for a hearing as to the basis for the prosecutor's exercise of a peremptory challenge to remove the only qualified African–American juror from the jury. If the remand hearing does not disclose a constitutional violation, defendant's convictions and sentence are affirmed.

Remanded for a hearing as to the constitutionality of the prosecutor's peremptory challenge, and if found constitutional, affirmed. We do not retain jurisdiction.