**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0569-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EWART M. GUILLETTE,

     Defendant-Appellant.

_____

Submitted March 13, 2025 – Decided March 19, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-02-0188.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Meredith L. Balo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ewart M. Guillette appeals from the June 8, 2023[1] order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We previously discussed the underlying facts and procedural history of defendant's case when we affirmed his conviction and sentence. State v. Guillette, No. A-3140-15 (App. Div. Aug. 5, 2019) (slip op. at 3-9).[2] We include a summary of the facts for purposes of addressing defendant's arguments.

Defendant and his wife, Stacey, separated in the summer of 2010, and she moved out of their home with their two children. In August 2010, Stacey and the children were staying at the YWCA on East Jersey Street in Elizabeth, which provides services to survivors of domestic violence. On August 30, 2010, they spent the day with Stacey's sister and left to return to the YWCA at approximately 8:00 p.m.

As Stacey and the children walked toward the YWCA stairs, defendant approached her and attempted to force her into his car. She refused, and defendant pushed her up the stairs. The son testified defendant shoved Stacey

---

[1] The order is dated June 6 but was filed on June 8, 2023.

[2] On January 21, 2020, our Supreme Court denied defendant's petition for certification. See State v. Guillette, 240 N.J. 423 (2020).

A-0569-23

into a corner at the top of the steps, pulled a gun from his waistband, and began shooting her while she screamed for him to stop. The shooting was witnessed by two other individuals who testified at trial, and captured on surveillance video from the YWCA. The surveillance video showed defendant shoot Stacey numerous times and then "pull[] out a second weapon and continue[] to shoot" her. Stacey was shot sixteen times.

After law enforcement processed the scene and interviewed witnesses, they requested an emergent ping order from defendant's cellphone service provider. His phone was traced to a hotel in Philadelphia. Philadelphia homicide detectives obtained a warrant to search defendant's hotel room. They executed the search warrant and seized clothing stained with Stacey's blood and three handguns. A fourth handgun was seized in a search of defendant's vehicle. Ballistics tests confirmed the shell casings at the scene were fired from two of the handguns seized.

Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C: 39-4(a); two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); fourth-degree false reports to law

A-0569-23

enforcement authorities, N.J.S.A. 2C:28-4; and fourth-degree contempt, N.J.S.A. 2C:29-9(b).

On September 15, 2015, jury selection began. On September 22, the jury panel was dismissed after an outburst by defendant. As a result of his conduct, the court arranged for defendant to listen to the proceedings in a separate room in the courthouse, but defendant chose to remain in jail and not listen to any portions of the proceedings. On September 24, jury selection recommenced.

On October 1, while jury selection was proceeding, the court conducted a hearing at which the history of plea negotiations was reviewed. Defense counsel asked the court if it would "accept [defendant's] plea . . . to an open indictment in exchange for a [forty-five]-year sentence." Defendant informed counsel his prior defense counsel "failed to communicate a plea offer to him that would have been favorable[,] . . . and now he[ is] forced to go to trial."

The court responded, "[a]s far as the plea offer is concerned[, the court's] understanding has always been that the State can extend or not extend a plea offer," and "when the State had a number, . . . [defendant] unequivocally turned [it] down." The State asserted defendant previously said "he would take a [twenty-year sentence]" when he rejected the State's plea offer of forty years.

A-0569-23

The court also recalled that after defendant rejected the State's forty-year plea offer, it inquired whether defendant would be interested in a "[thirty] with a [thirty]," to which he responded no because "[thirty] with a [thirty] is life." The State asserted, prior to January and February 2015, it offered defendant a plea deal of forty-five years and then another to serve fifty years, but both were rejected by defendant. Defense counsel indicated defendant "offered . . . a [thirty]" in December of 2014 while the "State was at a [fifty]."

On October 6, the jury was sworn. On October 20, defendant advised the court he was "going to testify." Defense counsel assured the court he and defendant discussed his right to testify "extensively [a]nd in detail." Defendant subsequently indicated his testifying was "[s]till an open question" and he "need[ed] more time." The court and defendant then engaged in the following colloquy:

> [COURT]: Do you understand you are only to answer the questions that you are asked?
>
> [DEFENDANT]: Okay.
>
> [COURT]: Do you understand that?
>
> [DEFENDANT]: Yeah.
>
> [COURT]: Are you going to follow that direction?

A-0569-23

[DEFENDANT]:  To the best of my abilities[,] I will try.

[COURT]:  Do you have any doubt about your ability to follow that direction?

[DEFENDANT]:  No.

[COURT]:  Do you also understand that you are not to blurt out, speak to the jury, speak to [the court], say anything that[ is] not in response to a specific question asked of you?  Do you understand that?

[DEFENDANT]:  Yes.  I will try to take my meds tomorrow.

[COURT]:  Do you understand if you do[ not] follow any of these directions that [the court] will have the jury go to the jury room[, a]nd then [the court] will ban you from the courtroom [, a]nd then [the court] will strike your testimony, [a]nd under no circumstances will [the court] declare a mistrial?  Whatever you do in front of this jury you[ are] going to have to live with.  Do you understand all that?

[DEFENDANT]:  Yes, Your Honor.

On October 21, defendant indicated he wished to testify.  Defense counsel again advised the court he "prepared [defendant] for his testimony," and prior to taking the stand, defendant affirmed to the court he understood he was not permitted to "speak except in response to questions."  Defendant confirmed "everything the [court] just instructed [him] that[ is] something that [defense

6

A-0569-23

counsel] have also instructed [him]." Defendant was then escorted to the witness stand.

As the jury entered the courtroom, defendant addressed one of the jurors by name:

> [DEFENDANT]: – [H]ow you doing? You from . . . Hillside, right?
>
> [COURT]: Mr. Guillette.
>
> [DEFENDANT]: You do[ not] remember me?
>
> [COURT]: Mr. Guillette.
>
> [DEFENDANT]: Oh, long time no see. I[ have] been locked up the past five years.

The court dismissed the jurors. As the jury was exiting the courtroom, defendant claimed he knew the juror "from Hillside." The court instructed defendant:

> [The court is] going to tell you again you are not to say anything to anyone in this courtroom, not the jurors, not [the court], not the attorneys, not anybody in the audience, you are to just answer the questions that are put to you by the attorneys unless [the court] sustain[s] the objection. If there is any other conduct that violates any of [the court's] rules[, the court] will ban you from the courtroom and we will continue the trial without your testimony. Do you understand?
>
> [DEFENDANT]: Yes, Your Honor.

A-0569-23

The jury reentered the courtroom. After spelling his name for the record, and before defense counsel asked a single question, defendant directly addressed the jury and said:

> [DEFENDANT]: Before we begin[,] I would like to let the jury know –
>
> [COURT]: No.
>
> [DEFENDANT]: – that I[ have] been locked up for five years –
>
> [COURT]: Take the jury out, please.

Defense counsel argued defendant should be allowed "to continue to exercise his constitutional right and assist in his defense." After getting assurances defendant would not speak to the jury, the court once again allowed him to testify. When trial resumed, defense counsel asked defendant one question before the following transpired:

> [DEFENSE COUNSEL]: Mr. Guillette, did you shoot your wife?
>
> [DEFENDANT]: Before we begin[,] I would like to tell the jury to vote –
>
> [PROSECUTOR]: Your Honor . . . he[ is] now saying before we begin –
>
> [DEFENDANT]: – not guilty – before we begin, the jury –

A-0569-23

[PROSECUTOR]: – he wants to give a speech.

[DEFENDANT]: – the jury . . . to vote not guilty. . . . I said before we begin I would [like] to tell the jury to vote not guilty –

[COURT]: All right. Stop. Take the jury out.

As a result of defendant's conduct, the court ruled defendant waived his right to testify.

The jury convicted defendant on all counts. On December 18, after appropriate mergers, the court sentenced defendant to life imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for first-degree murder, a consecutive ten-year term for second-degree endangering the welfare of a child, and concurrent terms on the remaining counts.

On July 17, 2020, defendant filed a pro se petition for PCR. After PCR counsel was appointed, defendant filed an amended verified petition for PCR and supporting certification. In his pro se petition, he contends appellate counsel "was ineffective for failing to raise the Gilmore[3] [i]ssue" among other arguments. In his supplemental certification, he argues his first defense counsel never provided him with a copy of the discovery and advised him to reject the State's initial plea offer of forty years "because it was still too early to determine

---

[3] State v. Gilmore, 103 N.J. 508 (1986).

 A-0569-23

what evidence the State had against [him]." After he reviewed the discovery, he "wanted to accept the [forty]-year plea offer," but "it was too late."

He also argues "[w]hile [his] attorneys prepared [him] to testify by focusing on what took place and how [he] should respond to the State's questions, [he] was not told that [he] could not state other things to the jury." He contends "trial counsel failed to properly prepare him to testify, resulting in the outbursts before the jury and the court's waiving his right to testify."

On June 8, 2023, after hearing oral argument, the PCR court entered an order denying defendant's petition for PCR supported by a written opinion. It found defendant failed to "note any specific acts that demonstrate trial counsel failed to 'properly' communicate with [him] regarding his plea."

The PCR court was "unconvinced by [d]efendant's claim" he "was unaware of the parameters of testifying and . . . did not know he was not allowed to speak freely or argue his case before the jury." It found "the trial court confirmed with [d]efendant's counsel that they had conferred with . . . [d]efendant on multiple occasions," and "the trial court confirmed with [d]efendant . . . he understood . . . he may only answer questions and may not speak freely."

A-0569-23

The PCR court rejected defendant's contention appellate counsel failed to raise the alleged Gilmore violation because "the trial court determined . . . the State met their burden of proof" by "establishing neutral reasons for their [peremptory] challenge[s]." It determined defendant's claim appellate counsel should have argued "implicit bias in the State's neutral reasons for these peremptory challenges resulted in an improper dismissal and rises to the level of discrimination necessary to succeed on appeal" lacked merit.

On appeal, defendant raises the following points for our consideration.

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSELS' AND/OR APPELLATE COUNSEL'S INEFFECTIVENESS.
>
> A.    Appellate Counsel Failed to Pursue the Prosecution's Alleged Unconstitutional Exercise of Peremptory Challenges.
>
> B.    First Trial Counsel Failed to Provide Defendant With Discovery and Thereby Failed to Timely Communicate the State's Plea Offer to Defendant.
>
> C.    Second Trial Counsel Abridged Defendant's Constitutional Right to Testify.

Having considered the record, we affirm substantially for the reasons set forth in the PCR court's written opinion. We add the following comments.

11

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)). "The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee an accused in a criminal prosecution the right to the effective assistance of counsel." State v. Taccetta, 200 N.J. 183, 192-93 (2009) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J 42, 58 (1987)). The right to effective counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012); see also Taccetta, 200 N.J. at 193-94.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; accord Fritz, 105 N.J. at 58 (adopting the Strickland two-prong test). Failure to meet either prong of the Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

A-0569-23

"To establish a prima facie case, defendant must demonstrate a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  R. 3:22-10(b).  The defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief.  State v. Nash, 212 N.J. 518, 541 (2013) (citing State v. Preciose, 129 N.J. 451, 459 (1992)).  To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision."  State v. Mitchell, 126 N.J. 565, 579 (1992).  Defendants must do more than make "bald assertions" of ineffective assistance.  State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

"The test is not whether defense counsel could have done better, but whether [they] met the constitutional threshold for effectiveness."  Nash, 212 N.J. at 543.  The court should review counsel's performance in the context of the evidence against defendant at the time of the plea or trial.  State v. Castagna, 187 N.J. 293, 314 (2006).  "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel."  State v. Worlock, 117 N.J. 596, 625 (1990).

Further, because prejudice is not presumed, the defendant must demonstrate "how specific errors of counsel undermined the reliability of the"

proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); see also Fritz, 105 N.J. at 52 ("[P]rejudice must be proved . . . it is not presumed."). To satisfy the second prong of the Strickland standard in the context of the plea process, defendant must show

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.
>
> [Lafler, 566 U.S. at 164.]

Claims of ineffective assistance of appellate counsel must assert that errors existed at the trial level that could have been ascertained by appellate counsel's review of the record but were never raised as issues on appeal. See State v. Echols, 199 N.J. 344, 359-61 (2009). To obtain a new trial based on ineffective assistance of appellate counsel, it must be established appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. Id. at 361. Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either that no error had occurred

14

or that it was harmless. State v. Reyes, 140 N.J. 344, 365 (1995); see also State v. Harris, 181 N.J. 391, 499 (2004).

A court reviewing a PCR petition based on claims of ineffective assistance has the discretion to grant an evidentiary hearing only if a defendant establishes a prima facie showing in support of the requested relief. Preciose, 129 N.J. at 462-63. The mere raising of a claim for PCR does not entitle a defendant to an evidentiary hearing. Cummings, 321 N.J. Super. at 170. If there are disputed issues as to material facts regarding entitlement to PCR, a hearing should be conducted. State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998).

We are not persuaded by defendant's claim appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. Specifically, that the State exercised peremptory challenges on constitutionally impermissible grounds.

A litigant may not be deprived of the right to trial by an impartial jury by excluding jurors for impermissible reasons. These include race, State v. Thompson, 224 N.J. 324, 340 (2016), or gender, State v. Chevalier, 340 N.J. Super. 339, 347 (App. Div. 2001) (noting "[w]omen constitute a cognizable group within the intendment of Gilmore").

A-0569-23

The burden is on the party objecting to a peremptory challenge to prove purposeful discrimination based on the "totality of the relevant facts." Batson v. Kentucky, 476 U.S. 79, 94 (1986) (citing Washington v. Davis, 426 U.S. 229, 239-42 (1976)); see also Gilmore, 103 N.J. at 534. "The opponent of the strike bears the burden of persuasion regarding racial [or gender] motivation, and a trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is entitled to great deference." Thompson, 224 N.J. at 344 (quoting Davis v. Ayala, 576 U.S. 257, 269 (2015)).

In considering each challenge, the trial court must conduct a three-step analysis. First, the court must determine whether the party objecting to the challenge made "a prima facie showing that the peremptory challenge was exercised on [a discriminatory] basis . . . . That burden is slight, as the challenger need only tender sufficient proofs to raise an inference of discrimination." State v. Osorio, 199 N.J. 486, 492 (2009). The first step can be established by evidence

> (1) that the prosecutor [or defendant] struck most or all of the members of the identified group from the venire; (2) that the prosecutor [or defendant] used a disproportionate number of [their] peremptories against the group; (3) that the prosecutor [or defendant] failed to ask or propose questions to the challenged jurors; (4) that other than their race [or gender], the challenged jurors are as heterogeneous as the community as a

16

whole; and (5) that the challenged jurors, unlike the victims, are the same race [or gender] as defendant.

[Id. at 504 (quoting State v. Watkins, 114 N.J. 259, 266 (1989)).]

If a prima facie claim is found, "the burden then shifts to the party exercising the peremptory challenge to prove a [gender- or] race- or ethnicity-neutral basis supporting the peremptory challenge." Id. at 492. The second step requires the party exercising the peremptory challenge to provide evidence "that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias." Gilmore, 103 N.J. at 537. The court must determine whether counsel provided a "reasoned, neutral basis for the challenge or if the explanations tendered are pretext." Osorio, 199 N.J. at 492.

If the court is satisfied legitimate nondiscriminatory grounds have been advanced in response to the objection, it must then determine under "the third step . . . whether, by a preponderance of the evidence, the party contesting the exercise of a peremptory challenge has proven that the contested peremptory challenge was exercised on unconstitutionally impermissible grounds of presumed group bias." Id. at 492-93; Thompson, 224 N.J. at 341.

During jury selection, defendant asserted a Gilmore challenge after the State exercised a peremptory challenge striking a Black juror. Counsel argued

that juror "would be the third [Black] juror out of the five [peremptory] challenges . . . the [S]tate has exercised."

The court requested the State proffer its reasons for striking the three Black jurors, and the State responded:

> [Juror No. 0167 was struck because] when [the court] had asked him the questions regarding the presumption of innocence he understood it[,] but his . . . explanation as to why . . . that it[ is] the defendant's prerogative and that his initial reaction to the charges was curious, . . . that[ is] something it[ is] obviously a murder charge. I[ have] heard all the other jurors that have come in and no one has said they were curious. So those are the reasons why the [S]tate excused him. It had nothing to do with race.
>
> [Juror No. 0123 was struck because] he was the individual who when [the court] was talking to him about whether he would believe the police more or less likely he went on and on and on about what[ is] happening in the news and that the police officers are shooting people for no reason just because they were walking away from them. He got very agitated and very angry when he was describing that. He indicated that people were getting killed for no reason by cops in Louisiana. They got killed because they ran from the cops, shot for no reason. People should[ not] just shoot people. He said he was very angry about that.
>
> When [the court] asked him lots of questions[,] he gave long pauses[,] and I would indicate at some point I had concerns about his cognitive ability.
>
> [Juror No. 0019 was struck because] I looked [her] up on Facebook and she had some Facebook posts that

A-0569-23

were concerning to the [S]tate as well as indicating that Chris Brown is someone that should be given acknowledgments and should be revered or tributes to him. Obviously, there has been a lot of public press about Chris Brown being involved in domestic violence and hitting people.

She also indicated that . . . her parents had [domestic violence], plates flew when her dad was upset[,] he would hit and strike her mother. There [were] never reports to the police. It did[ not] seem like it concerned her at all. It did[ not] seem like it bothered her. [The court] indicated that [it] asked her if they were still together[,] and she said yes. Then when asked who she lives with[,] she only said her father. I would also indicate . . . the defense yesterday requested . . . she be excused for cause and the [c]ourt denied that request.

The court denied defendant's <u>Gilmore</u> challenge. Defense counsel did not object and, on October 6, 2015, advised the court defendant was satisfied with the jury.

We are satisfied the court properly determined the State provided a "reasoned, neutral basis for the challenge[s]," <u>see</u> <u>Osorio</u>, 199 N.J. at 492, and properly denied defendant's <u>Gilmore</u> challenge. Appellate counsel did not fail to raise an issue that would have constituted reversible error on direct appeal. <u>See</u> <u>Echols</u>, 199 N.J. at 361.

Defendant's claim he would have accepted the State's initial plea offer of forty years if he had been provided with discovery is not convincing. He does

not identify what information he did not have that might have affected his decision to accept that offer. More importantly, his claim he would have accepted the offer is contradicted by the record. According to the court, defendant rejected the State's offer of forty years and flatly rejected the court's suggestion he consider a thirty-year plea deal because "[thirty] with a [thirty] is life." Instead, defendant indicated he would accept a plea offer of twenty years.

To satisfy the second prong of the Strickland standard in the context of the plea process, defendant must show "but for the ineffective advice of counsel there is a reasonable probability . . . defendant would have accepted the plea." Lafler, 566 U.S. at 164. The record does not support defendant's claim he would have accepted a forty-year plea offer but for counsel's alleged ineffectiveness. Rather, he rejected the State's plea offer because he was attempting to negotiate a more lenient sentence.

Defendant's claim defense "counsel failed to properly prepare him to testify, resulting in the outbursts before the jury and the court's waiving his right to testify" lacks merit. He concedes defense counsel prepared him to testify "by focusing on what took place and how [he] should respond to the State's questions." During defendant's testimony, the court instructed him repeatedly he was not permitted to address the jury directly. The court advised him he was

"not to blurt out, speak to the jury, speak to [the court], say anything that[ is] not in response to a specific question asked of [him]." Defendant responded he understood the court's instructions and confirmed his defense counsel gave him the same instructions. Notwithstanding the court's clear instructions and defendant's assurance he understood, he continued to engage in the same inappropriate conduct. His claim he would not have engaged in that conduct if defense counsel "properly prepar[ed] him to testify" is belied by the record.

We are satisfied defendant did not establish a prima facie case of ineffective assistance. The PCR court did not abuse its discretion by denying defendant's request for an evidentiary hearing and correctly denied his petition for PCR.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0569-23