STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
CHARLES O'DONNELL, DEFENDANT–RESPONDENT.

Argued September 12, 1989—Decided October 25, 1989.

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for appellant (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney; *Mildred Vallerini Spiller,* Deputy Attorney General, of counsel and on the brief).

*Robert T. Norton* argued the cause for respondent (*Norton, DeRose, Hamilton & Kress,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

Following defendant's conviction for official misconduct, the trial court sentenced him to a six-year custodial term. In an unreported opinion, the Appellate Division sustained the conviction, but reversed the sentence and remanded the matter for resentencing. We granted the State's motion for leave to appeal, and now reinstate the sentence originally imposed by the trial court.

I.

The facts surrounding the sordid incident underlying this case may be summarized as follows. On August 31, 1984, defendant, Charles O'Donnell, a police officer of the City of Elizabeth, arrested Kevin Burns. Because Burns resisted the arrest, defendant and his partner, Officer Kelly, subdued him.

Three other police officers arrived to provide "back-up" support and to control a gathering crowd. Instead of taking Burns to a holding cell at police headquarters, Kelly and O'Donnell took him to the police garage. According to Burns, defendant said the officers intended to beat him because he had robbed elderly residents of Elizabeth, including the relative of another police officer, Joseph Overberger. Defendant did not testify, and Kelly did not recall defendant making that statement.

At the garage, Burns's hands and ankles were handcuffed. Defendant and Kelly then placed Burns's hands on a hydraulic lift, which Kelly raised until Burns was lifted off his feet. While Burns was suspended, defendant hit him in the legs with a nightstick. Additionally, defendant punched the victim so hard that the stone fell from defendant's Marine Corps ring. Officer Overberger arrived and also punched Burns. After the beating, Burns was taken to Elizabeth General Hospital because of an arm injury he suffered before his arrest.

None of the police officers involved in the beating reported the incident. The matter came to light when an assistant prosecutor was preparing for the trial of Burns on several robbery charges. Aware of Burns's allegations that he had been beaten, the prosecutor interviewed defendant, who initially said that he had used his nightstick because Burns had resisted arrest. After being assured that his comments would be "off the record," O'Donnell told the prosecutor about the beating: "We took him back to the garage and beat him. We took care of him. We laid into him with our nightsticks. We called Overberger down and 'he got licks in, too.' " Defendant related the details of the beating and asserted that the police officers had beaten the victim "for the old people that Burns had gotten." He explained why the officers had beaten Burns between the neck and legs: "We only did that because when I had first gotten on the force I had opened up some guy's head and I had gotten some shit for that, besides it hurts more to hit them in the legs and it doesn't leave marks."

Defendant told the prosecutor not to worry about the incident because no one was present but the victim and police officers. Furthermore, defendant stated that if he were questioned, he would swear that he never hit Burns.

Together with two other police officers, defendant was indicted for official misconduct, contrary to *N.J.S.A.* 2C:30–2 and *N.J.S.A.* 2C:2–6, as well as aggravated assault, contrary to *N.J.S.A.* 2C:12–1b(2) and *N.J.S.A.* 2C:2–6. Officer Kelly turned State's witness and testified under a grant of immunity. *N.J.S.A.* 2A:81–17.3. The other officers were acquitted of all charges, and defendant was acquitted of aggravated assault. The jury was unable to agree on the charge of official misconduct against defendant, but on retrial defendant was found guilty of that charge.

Balancing the aggravating and mitigating factors, the trial court sentenced defendant to six-years' imprisonment without any parole ineligibility. The court found that defendant, who was a decorated Viet Nam veteran, had an exceptional record as a public servant. The only other mitigating factor was the potential hardship defendant would face in prison. *N.J.S.A.* 2C:44–1b(7) and –(11). Because of O'Donnell's boastful attitude about the beating administered to Burns, the court specifically rejected arguments that defendant was unlikely to commit another offense. *N.J.S.A.* 2C:44–1b(9). The court then found a number of aggravating factors: the cruelty of the assault, *N.J.S.A.* 2C:44–1a(1); the victim's vulnerability, *N.J.S.A.* 2C:44–1a(2); the likelihood that defendant would commit another offense, *N.J.S.A.* 2C:44–1a(3); and the need to deter similar police misconduct, *N.J.S.A.* 2C:44–1a(9).

In vacating the sentence, the Appellate Division found that the trial court improperly considered certain aggravating factors and failed to consider some mitigating factors. With respect to the aggravating factors, the Appellate Division ruled that the sentencing judge erred by concluding that there was risk that defendant would commit another offense. *N.J.S.A.*

2C:44–1a(3). The Appellate Division also found as a matter of law that the intentional nature of the offense did not support a finding that the crime was committed in a cruel manner. *N.J. S.A.* 2C:44–1a(1). Finally, the court found that by handcuffing the victim and suspending him from the hydraulic lift, defendant had not rendered him vulnerable or incapable of resistance within the meaning of *N.J.S.A.* 2C:44–1a(2). Concerning the mitigating factors, the Appellate Division stated that the trial court erred by failing to consider that defendant's conduct was the result of circumstances unlikely to recur, *N.J.S.A.* 2C:44–1b(8), and that the defendant was unlikely to commit another offense, *N.J.S.A.* 2C:44–1b(9). The State's appeal asserts that the Appellate Division incorrectly interpreted the meaning of the relevant aggravating factors and that the court exceeded its power of review by substituting its judgment for that of the trial court.

## II.

This case requires us to revisit the relative roles of trial and appellate courts in the sensitive area of sentencing. We begin with a review of familiar principles pertaining to those roles. In general, a trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence. *State v. Kruse,* 105 *N.J.* 354, 359–60 (1987); *State v. Roth,* 95 *N.J.* 334, 359–60 (1984). The role of the appellate court is different. It does not sit to substitute its judgment for that of the trial court. An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record. *State v. Jarbath,* 114 *N.J.* 394, 400–01 (1989); *Roth, supra,* 95 *N.J.* at 364–65. Assuming the trial court follows the sentencing guidelines, the one exception to that obligation occurs when a sen-

tence shocks the judicial conscience. *Roth, supra,* 95 *N.J.* at 365. With those precepts in mind, we turn to the sentence before us.

The trial court found that defendant was likely to commit another offense, *N.J.S.A.* 2C:44–1a(3), stating:

> [F]rom your attitude in telling the Assistant Prosecutor what you had done to Kevin Burns, being proud, almost boastful of what had happened to him, I cannot say that you would not commit a similar offense taking the law into your own hands and you felt justified, although, of course, you will no longer be able to do that as a police officer.

The Appellate Division rejected the trial court's finding:

> [W]e see no basis in the evidence to support the judge's finding that there is a risk that O'Donnell would commit another crime. In fact, just the opposite is true. Given O'Donnell's age, unblemished record and what he has suffered as a result of this single, inexplicable wrongdoing, it seems highly unlikely that he is a risk for future criminal behavior.

We disagree.

The fundamental principle is that an appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record. *Roth, supra,* 95 *N.J.* at 365–66. From the evidence adduced before it, the trial court found that defendant was "almost boastful of what had happened to him," suggesting not only defendant's lack of remorse, but also some pride in the beating he had inflicted on Burns. Furthermore, Officer Kelly testified that defendant was agitated by Burns's use of profanity during his arrest and transportation to the police garage, and that defendant verbally abused Burns during the beating. From this, the trial court could have found that defendant felt justified in beating Burns and that defendant failed to appreciate that no one, particularly a police officer, should take the law into his own hands. Consequently, the court could have concluded that defendant was likely to commit another offense. That finding logically precluded a finding of the mitigating factor that it was unlikely that defendant would commit such an offense. *N.J.S.A.* 2C:44–1b(9). Although defendant is no

longer on the police force, that fact alone should not prevent a finding that he might commit another assault.

Concerning the manner of the commission of the crime, the Appellate Division correctly ruled that when intent is an element of an offense, it may not be considered as an aggravating factor. *State v. Yarbough*, 100 *N.J.* 627, 633 (1985), *cert.* denied, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). We believe, however, that the Appellate Division misinterpreted the trial court's determination that defendant's intent was not only to assault the victim, but to do so in a way that maximized the victim's pain and minimized the evidence of the beating. In brief, the Appellate Division focused on defendant's intent to commit the assault, not on his intent to inflict pain. This orientation led the appellate court to misperceive the trial court's analysis and to define cruelty too narrowly.

Although we have not previously construed the meaning of "cruel" as used in *N.J.S.A.* 2C:44–1a(1), other states have construed the term as it appears in their statutes to require that the defendant must have inflicted pain or suffering on the victim. *See Juneby v. State*, 641 *P.*2d 823, 840 (Alaska App. 1982) (deliberate cruelty "must be restricted to instances in which pain—whether physical, psychological, or emotional—is inflicted gratuitously or as an end in itself. Conversely, when the infliction of pain or injury is merely a direct means to accomplish the crime charged, the test for establishing the aggravating factor of deliberate cruelty will not be met."), *modified*, 665 *P.*2d 30 (1983); *State v. Jeffers*, 135 *Ariz.* 404, 661 *P.*2d 1105, 1130 (1983) ("element of cruelty involves the pain and the mental and physical distress visited upon the victims"). We have accorded a similar construction to aggravating factor c(4)(c) in the sentencing phase of a capital cause when determining whether "[t]he murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." *N.J.S.A.* 2C:11–3c(4)(c). To justify the finding of that aggravating factor, the defendant must have intended not only to kill,

but "to inflict pain, harm, and suffering—in addition to intending death." *State v. Ramseur*, 106 *N.J.* 123, 208 (1987).

█ Here, substantial credible evidence supports the trial court's conclusion that defendant intended to commit the assault in a particular manner. By hoisting the victim in the air and striking him on the legs, defendant selected a method of beating that would increase the victim's pain. In making that selection, defendant intended more than an assault; he assured that the victim would suffer. We agree with the trial court that defendant's intention to cause pain aggravates the offense and warrants more severe punishment.

The lower courts also disagreed on the question whether by manacling the victim's hands and feet and hoisting him on the hydraulic lift, defendant rendered him "particularly vulnerable or incapable of resistance." In this regard, *N.J.S.A.* 2C:44–1a(2) requires a sentencing judge to consider as an aggravating factor

> [t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.

The trial court found that defendant had rendered his victim vulnerable within the meaning of the statute. The Appellate Division disagreed, stating:

> The fact that the victim was tied up does not bring this section into play. It seems to us that it is the intrinsic condition of the victim, *i.e.*, his or her youth or age, ill health, or disability which creates the vulnerability described as an aggravating factor under *N.J.S.A.* 2C:44–1a(2), not the manner in which the [offense] was committed, *i.e.* that the victim was tied up.

By limiting the definition of vulnerability to the intrinsic condition of the victim, the Appellate Division eliminated as an aggravating factor physical restraint of the victim by the accused. A plain reading of the statute belies the Appellate Division's interpretation. On its face, the statute does not limit "vulnerability" to age or other physical disabilities of the vic-

tim. It expressly includes ":any other reason" that renders the victim "substantially incapable of exercising normal physical or mental power of resistance." *Ibid.* Neither the words of the statute nor its legislative history justifies the conclusion of the Appellate Division that "vulnerability" is limited to the intrinsic condition of the victim. Although some cases have involved victims with intrinsic conditions that render them vulnerable, nothing in those cases restricts vulnerability to victims with such a condition. *See State v. McBride*, 211 *N.J.Super.* 699, 704 (App.Div.1986) (finding section 1a(2) applicable where amateur boxer over six-feet tall severely beat a fifty-six-year-old man); *see also State v. Dunbar*, 108 *N.J.* 80, 96 (1987) (including as an aggravating factor under section 1a that victims were elderly). *But cf. State v. Bryant*, 217 *N.J. Super.* 72, 81 (App.Div.1987) (finding that binding and gagging elderly victims during robbery did not make them more vulnerable than robbery itself), certif. denied, 108 *N.J.* 202 (1987), *cert.* denied, 484 *U.S.* 978, 108 *S.Ct.* 490, 98 *L.Ed.*2d 488 (1987).

■ Without doubt, defendant and Kelly rendered Burns unable to resist his attackers. Bound at both his wrists and ankles and suspended in midair, Burns could neither resist their attack nor shield himself from their blows. When, as here, a victim is so constrained as to make physical resistance virtually impossible, he or she has been rendered vulnerable within the meaning of section 1a(2).

In reviewing the sentence, moreover, the Appellate Division did not confine itself to determining whether the aggravating and mitigating factors as found by the trial court were supported by sufficient credible evidence. Understandably concerned about sending a former police officer to prison, the Appellate Division substituted its judgment for that of the trial court. The trial court's sentence, however, reflects a sensitive balancing of the aggravating and mitigating factors.

■ The offense for which defendant was convicted, official misconduct, is a crime of the second degree, which carries a range of five to ten years, *N.J.S.A.* 2C:43–6a(2), and a presumptive sentence of seven years, *N.J.S.A.* 2C:44–1f(1)(c). To down-

grade the offense and impose a lesser sentence, a trial court must be clearly convinced that the mitigating factors substantially outweigh the aggravating factors. *N.J.S.A.* 2C:44–1f(2). To overcome the presumption of imprisonment, a trial court must find that imprisonment "would be a serious injustice which overrides the need to deter such conduct by others." *N.J.S.A.* 2C:44–1d; *see Jarbath, supra,* 114 *N.J.* at 407; *Roth, supra,* 95 *N.J.* at 355. Here, the trial court made no such findings. Instead, it imposed a sentence for six years, one year less than the presumptive sentence of seven years. In reaching that result, the court considered defendant's otherwise "clean record" and "the particular hardship to this defendant as a former police officer in prison for this type of offense." The court continued, "[w]hile the mitigating factors do not substantially outweigh aggravating factors the defendant received less than the presumptive sentence because of his exceptional and exemplary past record going well beyond a simple law abiding life." Thus, the trial court expressly considered the evidence in mitigation of defendant's sentence and implicitly rejected the propositions that the mitigating factors substantially outweighed the aggravating factors, *see N.J.S.A.* 2C:44–1f(2), and that imprisonment would be a substantial injustice that overrode the need to deter others, *N.J.S.A.* 2C:44–1d. Given this careful balancing of the mitigating and aggravating factors, the Appellate Division should not have substituted its judgment for that of the trial court. On occasion, a sentence within the statutory guidelines may strike a reviewing court as harsh, "but that is the consequence of the legislative scheme and not a clear error of judgment by the trial court." *Dunbar, supra,* 108 *N.J.* at 83. Whatever harshness inheres in this sentence is overborne by the horror of a law enforcement officer physically abusing someone he has rendered helpless through the exercise of his office.

The judgment of the Appellate Division concerning defendant's sentence is reversed, and the sentence originally imposed by the Law Division is reinstated.

*For reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI, STEIN and POLLOCK—7.

*Opposed*—None.