# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4381-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRUCE D. STERLING,

    Defendant-Appellant.

_____

          Submitted December 19, 2016 — Decided  June 19, 2017

          Before Judges Sabatino, Nugent and Haas.

          On appeal from Superior of New Jersey, Law
          Division, Middlesex County, Indictment No. 05-
          10-1410.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (John V. Molitor, Designated
          Counsel, on the brief).

          Andrew C. Carey, Middlesex County Prosecutor,
          attorney for respondent (Joie Piderit,
          Assistant Prosecutor, of counsel and on the
          brief).

PER CURIAM

    Defendant Bruce D. Sterling appeals from a May 5, 2015

judgment of conviction entered after his second jury trial.  The

jury found defendant guilty of second-degree burglary, first-degree aggravated sexual assault, second-degree sexual assault, third-degree aggravated assault with a deadly weapon, second-degree possession of a weapon for an unlawful purpose, and third-degree terroristic threats. For these offenses, a judge sentenced defendant to an aggregate twenty-year custodial term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, defendant argues:

POINT I

THE TRIAL COURT'S FAILURE TO FOLLOW THE APPELLATE DIVISION'S DECISION MANDATES REVERSAL OF THE DEFENDANT'S CONVICTIONS. (NOT RAISED BELOW).

POINT II

THE STATE VIOLATED THE DEFENDANT'S CONFRONTATION RIGHTS. (NOT RAISED BELOW).

POINT III

THE DEFENDANT'S SENTENCE IS EXCESSIVE.

Finding no merit in defendant's arguments, we affirm.

This action's lengthy procedural history is detailed in State v. Sterling, 215 N.J. 65 (2013), and need not be repeated in its entirety. Pertinent to this appeal, in 2005, a Middlesex County grand jury charged defendant in a twenty-four-count indictment with multiple offenses committed against five women during five separate incidents that occurred between 2002 and 2005. The first

seven counts of the indictment stem from the first incident, in which the victim was sexually assaulted in her residence in July 2002. These seven counts and this incident are the subject of this appeal.

The first seven counts are: second-degree burglary, N.J.S.A. 2C:18-2; first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); second-degree sexual assault, N.J.S.A. 2C:14-2(c); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b). Defendant was tried on all but the unlawful possession of a handgun offense, and a jury found him guilty on all counts. Defendant appealed.[1]

On appeal, a panel of this court reversed and remanded for a new trial. State v. Sterling, No. A-5579-06 (App. Div. Aug. 15, 2011). The panel held the trial court erred by allowing the State to present unduly prejudicial other crimes evidence. Id. (slip op. at 56-57). Although the Supreme Court reversed in part the panel's decision on charges stemming from some of the other incidents, the Court affirmed the panel's reversal of defendant's

---

[1] The unlawful possession of a handgun count was dismissed before the first trial.

conviction on the indictment's first seven counts. Sterling, supra, 215 N.J. at 107-08.

The new trial on the first seven counts took place in 2014. The State developed the following proofs.

In 2002, the victim, her boyfriend, and three others lived in a single family home in New Brunswick. The victim's bedroom was located on the first floor "immediately when you walk in." On the day of the incident, the victim returned home after running errands in preparation for a trip to the mountains. She parked her car in a neighbor's driveway because there was no available parking, she was running late, and she only needed to grab a few things from inside the house. She shut the screen door after she entered the house, but did not lock the front door as she planned to be inside "less than five minutes."

After packing toiletries from the upstairs bathroom, the victim went downstairs into her bedroom. She heard the screen door shut, turned around, and saw defendant standing in her bedroom doorway. She did not know defendant and had never seen him before.

The victim's boyfriend and roommates were not home, and the victim asked if she could help defendant. He replied, "[t]ake your clothes off or I'll shoot you." He held a silver gun in his left hand. When the victim screamed for help, defendant went

behind her, put one hand around her waist and one hand over her mouth, and said "[s]hut up or I'll shoot you."

The victim began to cry. Defendant pushed her onto her bed face first, repeatedly told her to shut up or he would shoot her, closed and dead-bolted the bedroom door, and looked out the window. The victim offered defendant $600 and asked him not to hurt her. Defendant did not respond, but reached underneath the victim and removed her pants, underwear and shoes.

When the victim attempted to look at defendant, he hit her in the jaw with his gun and told her not to look at him. He proceeded to have vaginal intercourse with the victim while she laid with her head down and eyes closed. The gun remained in his hand the entire time.

The victim cannot recall the incident's duration, but eventually defendant "just stopped," and pulled up his pants, and the victim "curled up in a ball on the bed." Defendant asked the victim where her money was and she said it was in her car. Defendant instructed the victim to wait five minutes before exiting her house or he would shoot her. The victim waited five minutes and then drove herself to the hospital.

Hospital staff called the police, who transported the victim to a rape crisis center where she underwent a sexual assault examination. The nurse created a "sexual assault kit" with

evidence collected during the exam and gave it to the police, who submitted it to their lab.

Senior Forensic Scientist Marlene Strauss conducted an analysis of the DNA taken from the victim's sexual assault kit and prepared a report detailing her findings. Chief Forensic Scientist Joseph Petersack peer reviewed Strauss's report. The report indicated the presence of male DNA on the victim's cervical swab. When Strauss prepared the report, however, there was no suspect.

When a separate investigation of defendant began in 2005, three years later, police searched his apartment and found a silver gun. Police took a DNA swab from defendant's cheek, and Investigator Virgil Angelini requested a comparison of defendant's DNA and the male DNA profile recovered from the victim. Forensic Scientists Jennifer Banaag and Frank Basile conducted comparisons and concluded defendant was the source of the DNA recovered from the victim.

Police asked the victim to participate in a lineup, but she was unable to make an identification. She explained she did not "get a good look" at defendant because she was afraid he was going to shoot her and he wore "big reflective sunglasses" that she could not see through. When the victim saw defendant at trial, she testified she did not know him, did not give him permission

to enter her home, and did not give him permission to have intercourse with her.

As previously noted, the jury found defendant guilty as charged. A judge sentenced defendant to an aggregate custodial term of twenty years. At sentencing, the judge found the following aggravating factors: one, the nature and circumstances of the act and the actor's role therein, including whether it was committed in an especially heinous, cruel or depraved manner, N.J.S.A. 2C:44-1(a)(1); three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, defendant's prior record and the seriousness of the offense, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The judge found no mitigating factors. The judge found aggravating factor one because:

> [s]tranger rape of this type and involving the violence that was involved in this case, striking her with the handgun, display of the handgun, putting her at fear of her life if she did not submit to what the [Adult Diagnostic Center] called [defendant's] "hedonistic tendencies" warrants a finding that aggravating factor one should apply.

The judge found aggravating factor three because defendant "has a history of proclivity and inclination to engage in this sort of crime." The judge based aggravating factor six on defendant's

extensive and serious criminal record, which includes additional sexual assaults.

The judge imposed the maximum sentence because he determined defendant "needs to be locked up for as long as possible in order for women . . . to be safe. Because if he's out on the street, women are at risk."

On appeal, defendant first contends the trial court erred by failing to follow the Appellate Division panel's instructions to provide the jury with an identification charge at the new trial. Although the Appellate Division panel reversed defendant's first conviction based on the wrongful admission of other crimes evidence, the panel discussed other issues defendant raised. One issue involved the trial court's refusal to give the identification instruction defendant expressly requested. The panel explained:

> On appeal, defendant argues that the court should have instructed the jury in accordance with the introductory paragraph to the model charge pertaining to in-court and out-of-court identifications as follows:
>
>> (Defendant) as part of [his/her] general denial of guilt contends that the State has no[t] presented sufficient reliable evidence to establish beyond a reasonable doubt that [he/she] is the person who committed the alleged offense. The burden of proving the identity of the person who committed the crime is upon the State. For you to find this defendant guilty, the State

8

must prove beyond a reasonable doubt that this defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that other person. You must determine, therefore, not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proved beyond a reasonable doubt that this defendant is the person who committed it.

[Model Jury Charge (Criminal), "Identification: In-Court and Out-Of-Court Identifications" (2007).]

We agree with defendant that this would have been an appropriate instruction in defendant's second trial. Upon retrial, an instruction along these lines should be given. This suggestion is tempered, of course, by the recognition that the evidence might be different, counsel may request different charges, and the trial court retains discretion in fashioning an appropriate instruction.

[Sterling, supra, No. A-5579-06 (slip op. at 83-84).]

Defendant did not request this instruction during his second trial, nor did the court give it. Defendant now claims the trial court's failure to give the instruction constitutes a reversible error.

Because clear and correct jury charges are essential to a fair trial, State v. Adams, 194 N.J. 186, 207 (2008), "erroneous

instructions on material points are presumed to possess the capacity to unfairly prejudice the defendant." State v. McKinney, 223 N.J. 475, 495 (2015) (citations omitted). However, an error in the charge that could not have affected the jury's deliberations does not amount to reversible error. State v. Docaj, 407 N.J. Super. 352, 366 (App. Div.), certif. denied, 200 N.J. 370 (2009). In that regard, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012).

Here, defendant did not object when the court did not give the identification charge he had requested at his first trial, nor did he raise the issue he now raises on appeal. Because defendant did not object at trial, we review the charge for plain error. R. 1:7-2; R. 2:10-2; McKinney, supra, 223 N.J. at 494. Plain error in this context is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Adams, supra, 194 N.J. at 207 (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). When reviewing a charge for plain error, an appellate court must not examine the "portions of the charge alleged to be

erroneous in isolation; rather, 'the charge should be examined as a whole to determine its overall effect.'" McKinney, supra, 223 N.J. at 494 (quoting Jordan, supra, 147 N.J. at 422).

Applying these principles to the case before us, we conclude the trial court's omission to give, sua sponte, the charge defendant had requested seven years earlier at his first trial, was not plain error. Significantly, the victim never identified defendant. The State presented neither an in-court nor an out-of-court identification. Instead, the State established defendant was the perpetrator through DNA evidence retrieved by personnel at the hospital following the sexual assault, comparison of this DNA evidence to DNA swabbed from defendant, and expert testimony linking the DNA evidence.

In its charge to the jury, as it had done during the trial, the court instructed the jury on expert testimony. The court explained that Banaag, Basile, and Petersack had testified as experts, but the jury was not bound by their opinions. The court further instructed the jury it should give the expert opinions "the weight to which you deem it is entitled, whether that be great or slight. And if you want to reject it, you have the right." Additionally, the trial court's instruction on each substantive offense included the requirement that the State prove beyond a reasonable doubt defendant committed each element.

Examining the charge as a whole to determine its overall effect, McKinney, supra, 223 N.J. at 494, we find it inconceivable the trial court's omission — to give an identification charge neither required by the facts of the case nor requested by defendant — either prejudicially affected defendant's substantial rights or "possessed a clear capacity to bring about an unjust result." Adams, supra, 194 N.J. at 207. Our conclusion is fortified not only by defendant's failure to object when the court charged the jury, but also by his failure now to articulate in his argument how he was even possibly prejudiced. We thus reject defendant's argument.

In his second point, defendant argues the trial court erred by admitting a report prepared by forensic scientist Strauss without calling Strauss as a witness, thus violating defendant's right to confront his accusers. Defendant contends the State instead called Joseph Petersack, "who read Strauss's conclusions and then told the jury he approved of his absent colleague's work." We review this issue for plain error because defendant did not raise it at trial. R. 2:10-2.

In Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held "the admission of an out-of-court 'testimonial' statement permitted by state hearsay rules" unconstitutional "unless the person who made

12                                              A-4381-14T4

the statement is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine that person." State ex rel. J.A., 195 N.J. 324, 328 (2008). Nonetheless, the Sixth Amendment's confrontation clause does not require that "every analyst involved in a testing process . . . testify in order to satisfy confrontation rights." State v. Roach, 219 N.J. 58, 77 (2014), cert. denied, __ U.S. __, 135 S. Ct. 2348, 192 L. Ed. 2d 148 (2015).

> [A] defendant's confrontation rights are not violated if a forensic report is admitted at trial and only the supervisor/reviewer testifies and is available for cross-examination, when the supervisor is knowledgeable about the testing process, reviews scientific testing data produced, [makes conclusions based on the data], and prepares, certifies, and signs a report setting forth the results of the testing.
>
> [State v. Michaels, 219 N.J. 1, 6, cert. denied, __ U.S. __, 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014).]

Here, though the State did not call Strauss to testify at trial, it presented forensic scientist Petersack to testify about the conclusions drawn in Strauss's report. Petersack was responsible for overseeing and directly supervising five forensic laboratories, had extensive familiarity with the DNA testing process, and recognized Strauss's report as one he peer reviewed. In addition, he had initialed the bottom of each page within the

13

report, indicating he confirmed the data's accuracy. Because Petersack testified and subjected himself to cross-examination, defendant's confrontation rights were not violated simply because Strauss did not testify too.

Importantly, Petersack's testimony was not the only expert testimony the State presented. Forensic scientists Banaag and Basile — who conducted independent comparisons of defendant's DNA and the DNA recovered from the victim, and concluded the DNA recovered from the victim belonged to defendant — testified at trial and were subject to cross-examination. Considering this testimony, we cannot conclude the admission of Petersack's testimony had a clear capacity to produce an unjust result. R. 2:10-2.

Lastly, defendant argues that his sentence is excessive. He contends the trial court's finding of aggravating factor one is unsupported by the record. In a footnote, he asserts the sexual assault count should have been merged with aggravated sexual assault for purposes of sentencing, and the sentence the court imposed on count four, aggravated assault, appears to violate the No Early Release Act, N.J.S.A. 2C:43-7.2(d)(4); but he provides no factual basis or legal analysis for either assertion.

When imposing a sentence, a trial court should "identify the relevant aggravating and mitigating factors, determine which

factors are supported by a preponderance of the evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citation omitted). We may not substitute our judgment for that of the trial court, but are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifie[d] and balance[d] aggravating and mitigating factors that are supported by competent credible evidence in the record." Ibid. (citation omitted). "Assuming the trial court follow[ed] the sentencing guidelines," we may reject the sentence imposed only if it "shocks the judicial conscience." Id. at 215-16 (citing State v. Roth, 95 N.J. 334, 365 (1984)).

Here, the record amply supports the trial court's findings of aggravating factors. The trial court's balancing of these factors against the absence of mitigating factors is unassailable. As to aggravating factor one, "[i]n appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense." State v. Fuentes, 217 N.J. 57, 75 (2014) (citing O'Donnell, supra, 117 N.J. at 217). In the case now before us, defendant's gratuitous infliction of violence on the victim by striking her with his gun, considered in the context

of the horrific crime he committed, supports the court's finding of the first aggravating factor.

We need not consider defendant's remaining assertions concerning his sentence because he raised them in a footnote and failed to support them with either facts or a legal analysis. Our rules require that an appellant identify and fully brief any issue raised on appeal. R. 2:6-2(a); see also State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (reiterating that attorneys are required to support arguments with appropriate record references and justify their positions with specific references to legal authority). "It is, of course, clear that an issue not briefed is deemed waived." Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 2:6-2 (2017).

For the foregoing reasons, we affirm the judgment of conviction in its entirety.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4381-14T4