# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6236-12T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J.R.,

    Defendant-Appellant.

_____

        Argued September 30, 2014 — Decided September 29, 2015
        Remanded by Supreme Court January 9, 2017
        Re-argued April 26, 2017 — Decided August 29, 2017

        Before Judges Nugent, Accurso and Manahan.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Indictment No.
        10-09-1556.

        Jeffrey G. Garrigan argued the cause for
        appellant (Cammarata, Nulty & Garrigan, LLC,
        attorneys; Mr. Garrigan and Michael S. Doran,
        on the briefs).

        Erin M. Campbell, Assistant Prosecutor, argued
        the cause for respondent (Esther Suarez,
        Hudson County Prosecutor, attorney; Ms.
        Campbell and Thomas M. Zuppa, Jr., Assistant
        Prosecutor, on the briefs).

PER CURIAM

In November 2012, a jury found defendant, J.R., guilty of sexually abusing his stepson's pre-teenage daughter over the course of two years, and in July 2013, a judge sentenced defendant to an aggregate eighteen-year prison term. Defendant appealed and argued the following points:

I.    THE CSAAS TESTIMONY OF DR. TASKA WAS IMPERMISSIBLE BOTH IN ITS INTRODUCTION AND, SUBSEQUENTLY, SCOPE DURING THE COURSE OF THE TRIAL.

    A.   The Trial Court Erred In Admitting Dr. Taska's CSAAS Testimony.

    B.   The CSAAS Testimony Offered by the State Went Beyond its Permissible Scope.

    C.   The Jury Charges Related to the CSAAS and Fresh Complaint Testimony Materially Misled the Jurors, Confused the Issues, and Misrepresented the Evidence.

II.   THE TRIAL COURT ERRED IN ADMITTING THE VICTIM'S HEARSAY STATEMENTS TO THE STATE'S MEDICAL EXPERT, DR. PAULETT DIAH.

III.  THE TRIAL COURT ERRED IN FAILING TO CONDUCT VOIR DIRE OR INVESTIGATE AN IRREGULARITY INVOLVING A MINOR.

IV.  PROSECUTORIAL MISCONDUCT IN THIS CASE DEMANDS THAT DEFENDANT'S CONVICTIONS BE REVERSED.

V.   DEFENDANT IS ENTITLED TO A REVERSAL OF HIS CONVICTIONS BASED UPON THE INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL.

VI.  THE CIRCUMSTANCES SURROUNDING THIS TRIAL AND THE IMPACT OF HURRICANE SANDY WERE EXTRAORDINARY AND CALLED FOR A MISTRIAL.

VII. THE TRIAL JUDGE IMPROPERLY DENIED DEFENDANT'S MOTION FOR A NEW TRIAL.

VII. THE COURT ENGAGED IN AN IMPROPER SENTENCING ANALYSIS WHICH LED TO AN IMPOSITION OF A MANIFESTLY EXCESSIVE SENTENCE.

Perceiving the case as one decided "largely on the credibility of defendant and the victim," we found defendant's first point meritorious and therefore reversed and remanded for a new trial. State v. J.R., No. A-6236-12 (App. Div. Sept. 29, 2015) (slip op. at 3). The Supreme Court reversed and remanded. State v. J.R., 227 N.J. 393 (2017). It noted the expert's testimony concerning Child Sexual Abuse Accommodation Syndrome (CSAAS) "did not entirely conform to the limitations placed on CSAAS evidence in prior holdings by this Court," but concluded "the error was nonetheless harmless."[1] Id. at 400. The Court remanded the matter "to the Appellate Division so that it may consider the issues that it did not reach in its prior review of this case." Id. at 422.

---

[1] The Court declined to consider the argument of amicus curiae Office of the Public Defender (OPD) "that almost all of the hypotheses underlying CSAAS testimony have been rejected by the scientific community over several decades, and that CSAAS constitutes 'junk science' that has no place in the courtroom." J.R., supra, 227 N.J. at 421. The argument had not been made by defendant and the issue had not been properly developed at trial. Id. at 409, 421. The Supreme Court has since granted certification on this issue and remanded it to the trial court "for a hearing, pursuant to N.J.R.E. 104, to determine whether CSAAS evidence meets the reliability standard of N.J.R.E. [702.]" State v. J.L.G., ___ N.J. ___, ___ (2017).

In considering Points II through VII, it is unnecessary to repeat in their entirety the proofs the parties developed during defendant's trial. The facts are recounted comprehensively in our initial opinion, J.R., supra, (slip op. at 4-19), and in the Supreme Court's opinion, J.R., supra, 227 N.J. at 400-03. Significant to our disposition of defendant's remaining arguments, however, is the Supreme Court's assessment of the child victim's testimony and credibility.[2] The Court stated:

> In her compelling testimony, the child victim not only described the incidents of abuse, but explained her failure to report her allegations to anyone but her brothers. As to the critical question of defendant's access to the child on multiple occasions with no one else present, the victim's account was substantially supported by her parents and brothers, and by the admissions of defendant himself. Moreover, defendant's credibility was impeached in important respects when he testified.
>
> [Id. at 400.]

The Court summarized the child victim's testimony:

> N.R., fourteen years old at the time of trial, testified on behalf of the State. At length and in detail, she recounted the incidents that she had alleged in her police interview. She described for the jury the location of each offense, the manner in which defendant allegedly coerced her, the nature of defendant's sexual contact with her, and the aftermath of each incident. In addition to the incidents she had described in the

---

[2] N.R. was the child victim in the case.

interview, N.R., while testifying, recalled one instance in which defendant "tried to put [his penis] inside [of her] where the tampon goes," but she was in pain and resisted. She said that he apologized and assured her that he would never do that again.

N.R. stated that she had not been given access to the record of her interview in preparation for her testimony. She testified that despite the abuse, she continued with her schedule of visits to her father and his family, and acted normally, "because I was scared" and "because I didn't want them to know." She confirmed that she had told only her brothers about defendant's alleged sexual abuse, and instructed them not to tell anyone.

N.R.'s account was supported by the testimony of her parents, who described her behavior during the relevant period and her refusal to be left with defendant on the occasion in early 2010. N.R.'s testimony was also buttressed by her brother A.R., who provided "fresh complaint" testimony about her disclosure of the alleged abuse to him and their brother G.L.R.

[Id. at 405-06 (alterations in original).]

The Court also summarized defendant's testimony:

Defendant testified on his own behalf. Contrary to his statement to police, defendant conceded that N.R. and her brothers had stayed overnight in his apartment on many occasions. He admitted that, on at least one overnight visit, N.R. slept with him in his bed when his wife was not at home; he said that he kept the bedroom door open on that occasion and that when he awoke, N.R.'s brothers were asleep on the floor next to defendant's bed.

[Id. at 406.]

The Court noted "the critical witness for the State was not [the CSAAS expert], but [the child victim] herself." Id. at 418. The Court contrasted the victim's credibility with that of defendant:

> The record before this Court reveals that N.R. told the jury, in simple, non-confrontational language, why she was alone with defendant when the alleged acts of sexual abuse occurred, and explained the setting of each encounter. With minimal prompting by the prosecutor, using terms appropriate to her age, N.R. recounted each alleged instance of abuse and its aftermath. Although N.R. testified that she did not review her statement to police, two years earlier, in preparation for trial, her trial testimony was fundamentally consistent with that statement, and defense counsel had few discrepancies to explore on cross-examination.
>
> N.R. did not leave the jury to speculate about the reason why she delayed reporting the abuse to an adult and spoke only to her slightly older brothers about it. She testified that she did not disclose the abuse to an adult because she was afraid of defendant, who instructed her not to tell anyone, and that she told her brothers about the incidents in the hope that they would try to protect her.
>
> Although there were no witnesses to the alleged abuse, N.R.'s account was corroborated in important respects by members of her family. Her parents and brothers — including her oldest brother, G.L.R., who was called as a defense witness, - supported N.R.'s contention that defendant had access to N.R., on multiple occasions, with no one else present. Both brothers concurred with her account of her disclosure of the alleged abuse

6

to them, and her plea that they not tell anyone what she had told them. N.R.'s parents and brothers testified consistently about A.R.'s disclosure to his mother and the investigation that followed. The family members acknowledged that defendant was affectionately greeted by all three children, including N.R., and that he took them on outings. They recounted, however, N.R.'s unsuccessful attempt in early 2010 to avoid staying alone with defendant. In short, the testimony of four family members was essentially consistent with N.R.'s testimony on the critical questions of defendant's access to her and her "fresh complaint" of the alleged abuse.

In his testimony, defendant vehemently denied N.R.'s allegations of sexual abuse. Defendant confirmed N.R.'s account in material respects, however. Moreover, defendant's credibility was substantially challenged on cross-examination. In his police interview, defendant denied that N.R. ever stayed overnight at the home he shared with his wife, insisting that only her brothers made overnight visits to his home. In his trial testimony, defendant conceded that N.R. had stayed overnight in his apartment; he insisted that he did not remember stating otherwise to police officers. He admitted that, on occasion, N.R. had wanted to leave his apartment and go outside with her brothers, but was not permitted to do so, and stayed with him alone.

Defendant was also confronted with self-incriminating comments that he had made in his police interview, in which he noted that "nobody was there" except him and N.R., and pressed officers to tell him whether N.R. had been examined by a doctor. He admitted that he had commented to the officers, "I have the mind and capability to lie and remember many things. Sure, about lies and whatever. I can

A-6236-12T4

go to Court. Right? And you tell maybe 95 percent of whatever I say over here exactly in Court." Before the jury, defendant had no explanation for that statement.

[Id. at 418-420.]

The Court explained that the CSAAS expert's testimony was not extensive, the improper portion of the testimony was brief, and the trial court delivered a strong limiting instruction. Id. at 418. Ultimately, the Court concluded, "when the evidence is considered in its entirety, it is clear that the trial court's error with respect to the [CSAA expert] was not clearly capable of producing an unjust result, and does not warrant a new trial." Id. at 420.

Against that backdrop, we turn to defendant's remaining arguments. In Point II, defendant alleges the trial court committed reversible error by permitting the State's medical expert to recount the victim's detailed hearsay statements concerning the incidents of sexual abuse.

Under N.J.R.E. 803(c)(4),

> Statements made in good faith for purposes of medical diagnosis or treatment which describe medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof [are not excluded by the hearsay rule] to the extent that the statements are reasonably pertinent to diagnosis or treatment.

In contrast, if statements describing medical history or the inception or general character of the cause or external source thereof are made "for evidence gathering purposes," they are inadmissible.  State v. Pillar, 359 N.J. Super. 249, 289 (App. Div.), certif. denied, 177 N.J. 572 (2003).  "[I]n recognition of it being the State's burden to establish admissibility," if a doctor's testimony — or the record on appeal — "is not entirely clear as to why [the victim] was referred to [a doctor,]" then the victim's hearsay statements to the doctor are inadmissible.  Ibid.

Here, the record as to why the victim was referred to the State's medical expert is equivocal.  When specifically asked whether the purpose of the examination was for diagnosis or treatment, the doctor gave a non-responsive answer: "Well, in this particular case, it was . . . evaluation for the possibility of sexual abuse."  Perhaps of greater significance, the doctor found no evidence of sexual abuse.  In view of that finding, it would appear the doctor's testimony was relevant to explain to the jury that the absence of such findings is not inconsistent with sexual abuse.  If that indeed were the purpose of the opinion, then there is a valid argument that permitting the doctor to recount the victim's hearsay statements concerning the details of the abuse should have been excluded under N.J.R.E. 403, as the probative value of the evidence was substantially outweighed by the risk of

undue prejudice. In any event, it is difficult to distinguish the equivocal testimony in this case from that given in Pillar.

Nonetheless, we conclude that any error in admitting the evidence was harmless. We reach this conclusion based on the consistent and compelling testimony of the victim, in contrast to the credibility issues that plagued defendant. As the Supreme Court noted, "[s]ignificantly the critical witness for the State was . . . N.R. herself." J.R., supra, 227 N.J. at 418. Given the compelling testimony of N.R., as well as her family members and defendant himself, we cannot conclude the admission of the victim's hearsay statements through the testimony of the medical expert was clearly capable of producing an unjust result. R. 2:10-2.

For similar reasons, we reject defendant's argument in Point IV that the prosecutor's misconduct was so egregious it deprived defendant of a fair trial. Defendant asserts the prosecutor overstepped her authority by eliciting inadmissible hearsay testimony from the State's medical witness, improperly argued that fresh complaint testimony corroborated the victim's allegations against defendant, refused to refrain from repeatedly asking her witnesses leading questions, and improperly vouched for the credibility of the State's witnesses. While these assertions have some validity, they neither individually nor collectively require a reversal of defendant's conviction.

The trial court admitted the testimony of the State's medical expert. The trial court properly handled the prosecutor's apparent unwillingness to refrain from asking non-leading questions, at times admonishing her for her persistent conduct. The trial court also reacted appropriately on those occasions when defendant objected to what he now characterizes as the prosecutor's "bolstering" of the State's experts. And though the prosecutor improperly argued fresh complaint evidence, her statements were fleeting. In short, considered in the context of all of the State's evidence, and particularly in light of the victim's credibility, the prosecutor's conduct did not "substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of [the] defense." State v. Timmendequas, 161 N.J. 515, 575 (1999) (citations omitted), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001).

Defendant's arguments under Points III, VI, and VII are without sufficient merit to warrant discussion. R. 2:11-3(e)(2). We decline to address defendant's claim that his counsel was ineffective. There is "a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992) (citations omitted).

Lastly, in Point VII, defendant argues the trial court conducted an erroneous sentencing analysis. Defendant contends the court committed error in its analysis of factor seven, N.J.S.A. 2C:44-1(b)(7). The argument is based on the court's statement, "[t]he court finds this factor but I note that the legislative intent of the presumption of incarceration for first and second degree offenses renders . . . this factor essentially meaningless." According to defendant, the trial court confused the need to determine, in the first instance, whether a presumption of imprisonment, N.J.S.A. 2C:43-1(d), or a presumption of non-imprisonment, N.J.S.A. 2C:43-1(e), applies; with the responsibility of weighing aggravating and mitigating factors to determine the length of the sentence.

In addition, defendant argues the court "wrongly concluded that by finding [a]ggravating [f]actor three, N.J.S.A. 2C:44-1(a)(3), the risk of committing another offense[,] that it would be inconsistent to find mitigating factors eight and nine."

Lastly, defendant asserts the trial court's imposition of an eighteen-year term is inconsistent with its determination that "a sentence at or about the midpoint of the statutory range is warranted."

We review a trial court's sentence under a deferential standard, being careful not to substitute our judgment for that

12

of the trial court. <u>State v. O'Donnell</u>, 117 <u>N.J.</u> 210, 215 (1989). We will:

> affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [<u>State v. Fuentes</u>, 217 <u>N.J.</u> 57, 70 (2014) (quoting <u>State v. Roth</u>, 95 <u>N.J.</u> 334, 364-65 (1984)).]

When we review a trial court's determination of aggravating and mitigating factors, we will remand for resentencing if the court "fails to provide a qualitative analysis of the relevant sentencing factors on the record," or "the trial court considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue." <u>Ibid.</u> (citations omitted). The aggravating and mitigating factors found by the trial court must be based on "competent, reasonably credible evidence." <u>Roth</u>, <u>supra</u>, 95 <u>N.J.</u> at 363 (citations omitted). When the judge has followed the sentencing guidelines, and his findings of aggravating and mitigating factors are supported by the record, we will only reverse if the sentence "shock[s] the judicial conscience" in light of the particular facts of the case. <u>Id.</u> at 364-65.

Here, the trial court did not abuse its discretion in sentencing defendant. The trial court considered aggravating factor one, the nature and circumstances of the offense, but did not give it much weight. The court gave considerable weight to aggravating factor nine, deterrence. Lastly, the court gave weight to aggravating factor three, the risk defendant will commit another offense, "based upon the sheer number of acts" he committed.

The trial court found only mitigating factor seven, defendant's lack of criminal history, but gave it little weight because of the "legislative intent of the presumption of incarceration for first and second degree offenses[.]"

Considering the court's comments at sentencing in their entirety and in context, we find no error in the court's rejection of mitigating factors eight (defendant's conduct was the result of circumstances unlikely to recur) and nine (the character and attitude of the defendant indicate he is unlikely to commit another offense). There was no factual basis for a finding of mitigating factor eight, and the court's rationale for finding aggravating factor three — "based upon the sheer number of acts that this is indicative that the defendant will commit another offense" — negated a finding of mitigating factor number nine.

The court's rationale for giving mitigating factor seven (absence of prior criminal record) little weight is somewhat

14                                          A-6236-12T4

quizzical. It is difficult to understand how the presumption of incarceration for a first or second-degree offense somehow negates consideration of a defendant's previous law-abiding life for purposes of determining the length of the presumptive incarceration. The trial court did not support its view of the statute's legislative history with citation to any authority. Nonetheless, there was more than ample evidence to support the court's determination that the aggravating factors substantially outweighed the mitigating factors. And though there is an apparent discrepancy between the court's statement concerning a mid-range sentence and the eighteen-year sentence the court imposed, the balance of aggravating and mitigating factors is consistent with an above-mid-range sentence. See Fuentes, supra, 217 N.J. at 73 (citations omitted) (noting that "reason suggests that when the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range").

For the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6236-12T4