**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3003-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARK MELVIN,

    Defendant-Appellant.

_____

Submitted February 14, 2017 — Decided  March 1, 2017

Before Judges Yannotti and Fasciale.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 13-
05-1257.

Joseph E. Krakora, Public Defender, attorney
for appellant (Tamar Y. Lerer, Assistant
Deputy Public Defender, of counsel and on the
briefs).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Stephen
A. Pogany, Special Deputy Attorney General/
Acting Assistant Prosecutor, of counsel and
on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from his conviction for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). We affirm the conviction, but remand for resentencing.

We discern the following facts from evidence adduced at the jury trial. In September 2012, a male wearing a gray hooded sweatshirt and a mask entered a restaurant in Newark, shot and killed two men, and shot and injured a female employee of the restaurant. Officers found three bricks of heroin next to one of the male victims.

A detective (the detective) was working as a patrol officer in a marked patrol vehicle in the area on the day of the shooting. She testified that she heard a dispatch report of a car possibly involved in the shooting and saw a car fitting the description stopped at a corner. It was later determined that defendant owned the car and it had run out of gas. The detective testified she radioed that she saw the car, observed two occupants inside, and she and her partner approached the vehicle.

When the detective reached the vehicle, defendant said, "What's going on? I didn't do anything." He then exited the car and ran. Defendant was wearing a gray hooded sweatshirt when the detective first started pursuing him. The detective chased him, apprehended him, and arrested him.

Officers searched the areas where defendant had been running. They recovered two non-matching gloves and a gray hooded sweatshirt from the backyards where defendant ran.  The State's DNA expert testified that the gray hooded sweatshirt contained DNA evidence from one of the male victims.

Officers eventually searched the car and found a handgun, heroin, a glove, and a black facemask.  They found a black facemask in the rear passenger side of the car, which contained defendant's DNA.  An officer explained that the handgun and heroin were found in the front passenger side, "inside the door where the controls for the vehicle, like the windows and the door locks. . . it was actually inside a compartment in there."  Ballistic testing indicated the handgun from defendant's car was the same weapon used in the shooting at the restaurant.

In May 2013, an Essex County Grand Jury indicted defendant and charged him with two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1)-(2) (Counts One and Five); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (Count Two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Three); first-degree attempted murder, N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1 (Count Four); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (Count Six); third-degree unlawful possession of a controlled dangerous substance (CDS) (heroin),

N.J.S.A. 2C:35-10(a)(1) (Count Seven); third-degree possession of a CDS (heroin) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (Count Eight); and third-degree unlawful possession of a CDS (heroin) with the intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7 (Count Nine).[1]

A passenger (the passenger) in defendant's vehicle testified at trial. The State originally charged the passenger with "hindering," but this charge was dismissed before defendant's trial. The passenger first attempted to invoke his Fifth Amendment right not to testify, but the judge found he "ha[d] no realistic chance of criminal exposure arising out of these homicides." The judge informed the passenger that because the hindering charge was dismissed and the prosecution indicated he would not be charged with anything else related to this shooting, "you cannot logically incriminate yourself" and, therefore, "you have no valid privilege to assert."

The passenger testified that he was playing basketball in a park the morning of the shooting and flagged defendant down to get in his car. He testified that defendant was wearing a gray hooded sweatshirt. The passenger said defendant drove to the area of the

---

[1]  The State dismissed Count Four before trial began because this attempted murder charge related to the same victim referred to in Count Five.

shooting and got out, he heard gunshots, then defendant came back to the car and drove away.  He said defendant had his sweatshirt hood up, had a black glove in the sweatshirt pocket, and had a gun on his hip.  Defendant told the passenger that "he wasn't going to let [him] go to jail."

The jury found defendant guilty of second-degree unlawful possession of a handgun (Count Two).  The jury was unable to reach a verdict on the remaining seven counts.  The judge granted the State's motion to sentence defendant to an extended term pursuant to N.J.S.A. 2C:44-3(a), and sentenced defendant to twenty years imprisonment with ten years of parole ineligibility.

On appeal, defendant argues:

> POINT I
> BECAUSE THE TRIAL COURT INAPPROPRIATELY INTERFERED WITH THE DECISION OF THE STATE'S MAIN WITNESS TO NOT TESTIFY, THE DEFENDANT WAS DENIED DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL.  (Not Raised Below).
>
> POINT II
> THE STATE'S BURDEN TO PROVE THAT THE DEFENDANT POSSESSED THE HANDGUN WAS IMPERMISSIBLY LOWERED WHEN THE TRIAL COURT INSTRUCTED THE JURY THAT IT COULD INFER THAT THE HANDGUN FOUND IN THE CAR WAS POSSESSED BY ALL OF THE CAR'S OCCUPANTS.  (Not Raised Below).
>
> POINT III
> THE SENTENCING COURT VIOLATED THE DEFENDANT'S RIGHTS TO A JURY TRIAL AND DUE PROCESS BY FINDING THAT DEFENDANT COMMITTED THE MURDERS DESPITE THE JURY'S VERDICT.  MOREOVER, THE

SENTENCE IS EXCESSIVE. THEREFORE, THE SENTENCE MUST BE VACATED.

> A. The Sentencing Court Improperly Replaced Its Judgment For The Jury's In Sentencing The Defendant For Murders Which The Jury Did Not Convict Him Of Committing.

> B. The Defendant's Sentence Is Excessive.

> C. The Trial Court's Denial of Defendant's Right to Allocution Requires A Remand For Resentencing.[2]

We first address defendant's contention that the court interfered with the passenger's Fifth Amendment right not to testify. Because defendant did not object to this testimony at trial, this court will review for plain error. State v. Bunch, 180 N.J. 534, 541 (2004). Under this deferential standard, this court disregards any error or omission "unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2; see also State v. Czachor, 82 N.J. 392, 402 (1980) (explaining "[t]he test for plain error is whether under the circumstances the error possessed a clear capacity for

---

[2]   Defendant also filed a pro se supplemental brief arguing that the jury's verdict was against the weight of the evidence and that the trial court erred by not granting defendant's motion for a new trial after the passenger recanted his testimony post-trial. Defendant requests a judgment of acquittal on all counts of the indictment or a reversal of the conviction and a new trial. These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

producing an unjust result, that is, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached" (citation omitted)).

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The trial court must determine whether a witness is compellable by deciding whether there is "a realistic threat of incrimination." State v. Patton, 133 N.J. 389, 396 (1993). Defendant argues the State could have charged the passenger with the dismissed hindering charge and thus he should have been permitted to invoke his right not to testify.

The State argues this case is similar to State v. Johnson, 223 N.J. Super. 122, 129 (App. Div. 1988), certif. denied, 115 N.J. 75 (1989), where this court found that it was a mistaken exercise of discretion for the trial judge to advise a witness of his Fifth Amendment right not to testify. This witness gave a gun to a friend for protection and the gun was later used in an aggravated assault. Id. at 127-28. Because the risk that the witness would later be prosecuted for his conduct was "extremely remote, unrealistic and highly speculative," this court found the witness's Fifth Amendment right was not implicated. Id. at 133-34.

Although the witness in Johnson voluntarily testified, this case is similar in that the State made it clear that the passenger was not being considered for prosecution. The State sought testimony from the passenger consistent with his statement the day of the shooting, that defendant drove the car to the area of the shooting, got out, the passenger heard gunshots, and saw the gray hooded sweatshirt, a black glove, and a gun on defendant. The judge used his discretion to find that there was a remote or unrealistic threat that the passenger would incriminate himself and appropriately found he could be compelled to testify. There was no plain error in this determination.

We next consider whether the judge erred by instructing the jury it could infer that a handgun found in a vehicle was possessed by all of the vehicle's occupants. Defendant did not object to the charge at trial. "[A] defendant waives the right to contest an instruction on appeal if he does not object to the instruction." State v. Torres, 183 N.J. 554, 564 (2005). This court will review for plain error and determine whether the charge prejudicially affected the rights of the defendant and can "convince the court that of itself the error possessed the clear capacity to bring about an unjust result." State v. Chew, 150 N.J. 30, 82 (1997) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)), cert. denied, 528 U.S. 1052, 120 S. Ct. 593, 145 L. Ed. 2d 493 (1999).

N.J.S.A. 2C:39-2(a) states:

> When a firearm, weapon, destructive device, silencer, or explosive described in this chapter is found in a vehicle, it is presumed to be in the possession of the occupant if there is but one. If there is more than one occupant in the vehicle, it shall be presumed to be in the possession of all, except under the following circumstances:
>
> (1) When it is found upon the person of one of the occupants, it shall be presumed to be in the possession of that occupant alone;
>
> (2) When the vehicle is not a stolen one and the weapon or other instrument is found out of view in a glove compartment, trunk or other enclosed customary depository, it shall be presumed to be in the possession of the occupant or occupants who own or have authority to operate the vehicle; and
>
> (3) When the vehicle is a taxicab and a weapon or other instrument is found in the passenger's portion of the vehicle, it shall be presumed to be in the possession of all the passengers, if there are any, and if not, in the possession of the driver.

On the subject of the unlawful possession of the weapon charge, the judge instructed the jury:

> I have instructed you concerning circumstantial evidence that you may infer a fact from other facts in the case if you find it is more probable than not, if the inferred fact is true. Evidence has been presented that a handgun was found in a vehicle. If you find that the vehicle had more than one occupant, you may infer that the handgun was possessed by all of the occupants.

A-3003-14T1

> If you find the handgun was on the person of one of the occupants, you may infer that it was possessed by that occupant alone.
>
> You are never required or compelled to draw any inference.

Defendant argues the judge erred in delivering the instruction because the gun was found in a "secret compartment" of a car. The trial court found that the exception under N.J.S.A. 2C:39-2(a)(2) did not apply and thus did not instruct the jury on this exception. Defendant argues the secret compartment was a "non-customary depository" and the jury should have been instructed that it could not infer that he possessed the weapon. However, even if the court found the secret compartment in the passenger-side door where the heroin and handgun were found was a "customary depository," he would still be the one presumed to be in possession of the weapon because he owned and had authority over the vehicle.

Any error in this instruction would not be clearly capable of producing an unjust result. The trial court instructed the members of the jury that they could infer the handgun was possessed by all occupants of the vehicle if they found the vehicle had more than one occupant. The judge added, "You are never required or compelled to draw any inference."

The jury heard evidence of where the gun was found and how many occupants were in the vehicle when the detective first saw the car. Defendant owned the car and was in the driver's seat when officers approached that day. The passenger testified he saw the gun on defendant's hip when he came back to the car. The gun was found in a secret compartment in a car that defendant owned. The jury had more than enough evidence to find defendant unlawfully possessed the handgun that day beyond a reasonable doubt. There was no plain error in this jury charge.

On the sentencing issue, defendant contends the court abused its discretion by considering the charges on which the jury was hung. Our review of sentencing determinations is limited. State v. Roth, 95 N.J. 334, 364-65 (1984). We will not ordinarily disturb a sentence imposed which is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-16, 220 (1989).

In sentencing, the trial court—"first must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." State v. Case, 220 N.J. 49, 64 (2014). The court must then "determine which factors are supported by a preponderance of [the] evidence, balance the

relevant factors, and explain how it arrives at the appropriate sentence." O'Donnell, supra, 117 N.J. at 215.

We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifie[d] and balance[d] aggravating and mitigating factors that [were] supported by competent credible evidence in the record." Ibid. Furthermore, when a court is sentencing an individual to an extended-term under the persistent offender statute, N.J.S.A. 2C:44-3, the decision to sentence the defendant within that extended-term range "remains in the sound judgment of the [sentencing] court" subject to review under "an abuse of discretion standard." State v. Pierce, 188 N.J. 155, 169 (2006).

Double jeopardy provides protection "against multiple punishments for the same offense," among other protections. State v. Yoskowitz, 116 N.J. 679, 689 (1989). Here, the judge relied on United States v. Watts, 519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997), for the proposition that he could, by a preponderance of the evidence, find that defendant had used the handgun to commit the shooting and consider this in sentencing. Accordingly, the judge stated "I have such discretion, and will consider conduct on the [counts] for which the jury was unable to reach a unanimous verdict." Under certain circumstances, Watts permits a sentencing judge to consider acquitted charges in

sentencing.  Id. at 149, 117 S. Ct. at 634, 136 L. Ed. 2d at 560. In this case, however, defendant was scheduled for retrial on the murders and other charges on which the jury was hung.

The judge also cited State v. Jarbath, 114 N.J. 394, 412 n.4 (1989), stating that a sentencing judge may consider otherwise inadmissible evidence including, "the arrest record, polygraph reports, investigative reports, juvenile adjudications, and unlawfully-seized evidence."  He reasoned that this proposition combined with the Watts holding permitted him to find defendant committed the shooting and punish him accordingly.[3]

The judge found aggravating factor two, the gravity and seriousness of the harm inflicted upon the victim; factor three, the risk that defendant will commit another offense; factor six, the extent of defendant's criminal record; and factor nine, the need to deter defendant and others from violating the law. N.J.S.A. 2C:44-1(a)(2), (3), (6), and (9).  He found no mitigating factors.  The judge stated "there is reliable and credible evidence . . . identifying [defendant] as the shooter."  He found "by a preponderance of the credible evidence at trial, that [defendant] did in fact use a firearm, which resulted in the death of [the two

---

[3]   The judge cited an unpublished decision by this court as well, but that case also concerned acquitted charges, not a hung jury. State v. Van Hise, No. A-2115-07 (App. Div. July 9, 2010) (slip op. at 4-5).

male victims] and the injury to [the female victim.]" The judge sentenced defendant to the maximum extended term for unlawful possession of a weapon, twenty years imprisonment.

This court has considered the issue in State v. Tindell, 417 N.J. Super. 530, 569, 572 (App. Div. 2011), which remanded for resentencing when a judge "took exception to the verdict" and stated on the record that the jury "enabled this defendant to literally get away with murder". The defendant in that case was tried for first-degree murder but convicted of second-degree manslaughter and other lesser charges; the judge sentenced him to five consecutive maximum terms. Id. at 571-72, 568. Judges are not permitted "to act as a 'thirteenth juror,' substituting their judgment for that of the jury." Id. at 570-71 (quoting State v. Whitaker, 79 N.J. 503, 515-16 (1979)).

Here, the judge also substituted his judgment for that of the jury. He considered the charges on which the jury was hung even though a new trial would occur. Defendant could later be punished again if convicted of these crimes, implicating double jeopardy issues. The judge improperly found aggravating factor two, the gravity and seriousness of harm inflicted on the victim, because there is no victim named in the unlawful possession of a weapon offense. See State v. Lawless, 423 N.J. Super. 293, 304-05 (App. Div. 2011), aff'd, 214 N.J. 594 (2013) (holding that aggravating

factor two was improperly applied when the judge considered other victims and the defendant only pled guilty to one crime involving one person). The judge abused his discretion by finding defendant was the shooter by a preponderance of the evidence and considering that conduct in his sentencing decision.

After considering the record and the briefs, we conclude that defendant's remaining arguments are "without sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(2). We add the following brief remarks. The judge had the discretion to impose an extended term under the statute. At sentencing, the judge did not deny defendant his right to allocution. The judge simply advised defendant he may not want to speak as freely in order to protect his claim of innocence for the retrial on the other charges.

Affirmed in part and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3003-14T1